Argued May 3, affirmed August 2, 1973

MOORE *Appellant, v.* WEST LAWN
MEMORIAL PARK ᴇᴛ ᴀʟ, *Respondents.*

512 P2d 1344

*Edward R. Fechtel,* Eugene, argued the cause for appellant. With him on the briefs were Tilbury & Kane, Portland, and Husband, Johnson & Frye, Eugene.

*Robert W. Hill,* Eugene, argued the cause for respondent. With him on the brief were Hill & Schultz, Eugene, and Gearin, Landis & Aebi, Portland.

DENECKE, J.

Plaintiff brought this action for damages caused by alleged libelous statements. The trial court sustained a demurrer to plaintiff's complaint upon the ground that the alleged libelous statements were absolutely privileged. Plaintiff appeals.

The defendants moved to dismiss the appeal. The ground urged was that the record was incomplete. ORS 19.108.

The pleading process was complicated. However, in essence, after the defendants' demurrer was sustained plaintiff filed an amended complaint omitting the libel cause of action to which the demurrer had been sustained. Judgment was entered against plaintiff on this complaint. Plaintiff's sole assignment of error is that the trial court erred in sustaining the demurrer to the first complaint.

Defendants contend that the allowance of the demurrer cannot be assigned as error because when plaintiff pleaded over the first complaint ceased to be a part of the record. Another way of stating defend-

ants' reasoning is that the plaintiff waived any objection to the trial court's ruling on the demurrer to the complaint by filing an amended complaint.

We have stated many times: " '* * * [W]hen a pleading is amended, the original pleading ceases to be a part of the record * * *.' " *Wells v. Applegate,* 12 Or 208, 209, 6 P 770 (1885). Whatever may have been the early practice, this is not literally true under modern appellate practice. The trial court file which contains all pleadings is required to be part of the record on appeal. ORS 19.005 (3) and 19.074.

We also have acknowledged that not only are all the pleadings physically part of the record on appeal, "[b]ut an original is not superseded by an amended complaint for all purposes, and the former may be considered as part of the record of the case for the purpose of showing when the action was commenced, and whether or not a new or different cause of action was introduced by the amendment upon the hearing of a demurrer raising those questions." *Fox v. Ungar,* 164 Or 226, 229, 98 P2d 717 (1940).

We also have stated many times if a pleading is amended after a demurrer has been sustained any objections to the rulings of the court on the demurrer are waived. *Hume v. Woodruff,* 26 Or 373, 376, 38 P 191 (1894). The "rule" was in two parts: if the demurrer was sustained and the party amended his pleading, he waived his right to object to the ruling on the demurrer; if the demurrer was overruled the demurring party waived his right to object to the overruling of the demurrer if he filed an amended pleading. *Natwick v. Moyer,* 177 Or 486, 497, 163 P2d 936 (1945).

The legislature changed the second part of the

"rule" by providing that if a demurrer to a complaint is overruled and the pleader answers, he does not waive his right on appeal to urge that the demurrer was incorrectly overruled. ORS 16.330. The same right was accorded when a motion to strike was overruled and the defendant answered. ORS 16.400.[1]

The statutes do not deny a party the right to claim as error the ruling of the court in sustaining a demurrer when the party has continued to plead after the demurrer.

Adherence to the "old rule" would continue an impediment to judicial efficiency when the pleader has attempted to allege several causes of action or several theories of recovery for the same injury. Under the "old rule" when a demurrer was sustained to one of several causes of action or theories alleged and the pleader was of the opinion that he could not state his found-to-be defective allegations any more favorably, the pleader had a difficult choice. He could waive the cause of action or theory found defective and file an amended complaint omitting the offending cause or theory. Or, the pleader could go through a series of burdensome maneuvers. He could take voluntary nonsuits on his remaining causes of action or theories and permit an order of dismissal and judgment to be taken against the cause or theory to which the demurrer was sustained.[2] He then could appeal from the judgment. We can think of no justification for forcing such a choice upon a pleader.

---

[1] Bay Creek Lumber Co. v. Cesla, 213 Or 316, 320-323, 322 P2d 925, 324 P2d 244 (1958), distinguished motions to strike and motions to make more definite and certain.

[2] Durkheimer Inv. Co. v. Zell, 161 Or 434, 90 P2d 213 (1939), holds an appeal will not lie unless voluntary nonsuits are taken on the remaining causes or theories.

Not only is this procedure burdensome, but more important, it is in effect a piecemeal appeal which we consistently have criticized as being judicially inefficient. *Ter Har v. Backus,* 256 Or 288, 290, 473 P2d 143 (1970).

■ ORS 19.140 provides: "Upon an appeal, the appellate court may review any intermediate order involving the merits or necessarily affecting the judgment or decree appealed from; * * *." The intent of this statute of long standing can best be served by holding that the filing of an amended complaint does not waive the right to object on appeal to the ruling of the trial court sustaining a demurrer to a cause of action or theory alleged in the previous complaint.

■ In cases in which a demurrer has been sustained to one of several causes of action or theories of recovery alleged, we hold that the filing of an amended complaint omitting the cause or theory to which the demurrer was sustained does not waive the pleader's right on appeal to object to the sustaining of the demurrer. The line of cases stating to the contrary starting with *Huffman v. McDaniel,* 1 Or 259, 261 (1859); *Wells v. Applegate,* supra (12 Or 208), etc., are overruled.

Plaintiff has a license as an embalmer and is an applicant for a license as a funeral director. The licensing of both is a function of the State Board of Funeral Directors and Embalmers. Defendants wrote to the State Board: "Our business association with Mr. Moore [plaintiff] leaves great doubts as to his sincerity for gaining a Funeral Directors' License." Other parts of the letter contain the alleged defamatory remarks. Plaintiff alleged the remarks were false and were made maliciously.

■ When defamatory matter is absolutely privileged no cause of action exists even though the defamatory matter is uttered maliciously, as well as falsely. *Grubb v. Johnson,* 205 Or 624, 631, 289 P2d 1067 (1955).

The key case is *Ramstead v. Morgan,* 219 Or 383, 347 P2d 594, 77 ALR2d 481 (1959). There, the defamation was contained in an unsolicited letter sent by the defendant to a grievance committee of the State Bar. No proceeding was in progress and the letter did not result in any formal proceeding. We held the letter absolutely privileged.

We stated that the granting of an absolute privilege to defame "is based upon the ground that 'there are certain relations of life in which it is so important that the persons engaged in them should be able to speak freely that the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly, and in order that their duties may be carried on freely and without fear of any action being brought against them, it says: "We will treat as absolutely privileged any statement made in the performance of these duties." ' " *Ramstead v. Morgan,* supra (219 Or at 387).

We further reasoned that the relation of citizens to judicial proceedings is so important that "[t]he absolute immunity attaches to statements made in the course of, or incident to a judicial proceeding." 219 Or at 388. We held that this includes quasi-judicial proceedings before administrative bodies and "[t]he privilege is made applicable to proceedings before administrative bodies having the power to grant and revoke licenses." 219 Or at 389.

■ In his brief and upon oral argument plaintiff attempted to distinguish *Ramstead* from his case, but we find that *Ramstead* is controlling. We cannot con-

clude that the practice of law is so much more important than the practice of funeral directors that communications to the licensing body for lawyers is absolutely privileged, whereas communications to the licensing body for funeral directors is not.

Plaintiff relies upon *Grubb v. Johnson,* supra (205 Or 624), because it involved the licensing of an insurance solicitor which is comparable to the licensing of a funeral director. The decision, however, is not in point. In *Grubb* the defendants operated an insurance agency. They wrote the Insurance Commissioner requesting him to revoke plaintiff's license to solicit insurance on behalf of defendants. The letter also contained defamatory statements. We held the statements were not absolutely privileged because the Commissioner was called upon to act in a ministerial, not a quasi-judicial, way. The statute provided that if the employing agent, the defendants, requested that the solicitor's license be revoked, the revocation was mandatory. The defamatory statements were irrelevant. If the employing agent asked that the solicitor's license be revoked, the Commissioner had to revoke the license, regardless of the grounds asserted. The State Board of Funeral Directors and Embalmers, on the other hand, cannot grant a license without making determinations of competency and character.

On oral argument plaintiff stressed that while the defamation might have been made incident to the State Board's investigatory power, it was not made to the State Board when it was exercising its hearing powers. Plaintiff argues that the significance of the distinction is that at a hearing the witness is under oath and probably will not make false statements as lightly as in an unsworn letter invoking the administrative agency's investigatory power.

That a witness in a judicial proceeding is sworn has been stated as a reason for granting absolute privilege to statements of witnesses in judicial proceedings. However, the courts have extended the privilege to unsworn, out-of-court statements because encouraging the sending of information to a licensing body is in the public interest. Such information may be the initiating cause of the body exercising its quasi-judicial function. If any credence is given such statements they will probably be explored in a judicial proceeding and the declarant will be asked to repeat them under oath. The letter in *Ramstead v. Morgan,* supra (219 Or 383), is an example. Another example is *Shummway v. Warrick,* 108 Neb 652, 189 NW 301 (1922). Plaintiff filed an application for a bank charter with the banking board. The defendant wrote a libelous letter to the board charging defendant with malfeasance in a public office. The court held the letter absolutely privileged.

Plaintiff has cited *Meyer v. Parr,* 69 Ohio App 344, 37 NE2d 637 (1941), which, on facts comparable to these, held the communication was not absolutely privileged. The reasoning of that decision is not persuasive.[9] That court held the Ohio State Board of Embalmers was not exercising a judicial function because the members were appointed and according to the Ohio Constitution only elected judges could exercise the judicial function. The court went on to state that if an absolute privilege was to be accorded to defamatory statements made to administrative agencies it should be accorded by the legislature.

Affirmed.

---

[9] Note 4, U Pa L Rev 877, 878, n 14 (1949), is very critical of the decision.