Argued September 5, affirmed as modified October 16, 1975

SHEPHERD, *Respondent, v.* KENWISHER,
*Defendant,* and HUB LUMBER CO., *Appellant.*

541 P2d 439

332

*William C. Wolke,* Roseburg, argued the cause for appellant. With him on the brief were Luoma, Kelley & Wolke, Roseburg.

*Robert H. Anderson,* Roseburg, argued the cause for respondent. With him on the brief were Stults, Murphy & Anderson, Roseburg.

TONGUE, J.

This is an action for rent allegedly due under a rental contract for the use of a log skidder, with a counterclaim for the value of repairs made by defendant. The case was tried before a jury. Defendant Hub Lumber Co. appeals from an adverse judgment.

*The facts.*

On or about November 10, 1972, the timber manager of defendant Hub Lumber Co., a Mr. Larson, entered into an oral rental agreement with plaintiff for the use by defendant Kenwisher of a log skidder owned by plaintiff. Defendant Kenwisher was one of Hub's contract loggers and was logging timber purchased by Hub in Douglas County.[1]

The testimony is in conflict whether the agreed rental payments were to be $600 per month, as claimed by Mr. Lawson, the Hub timber manager, or "upon the rate of $600 per two weeks," as claimed by plaintiff. In any event, $600 was paid by Hub to plaintiff at that time. It was also agreed that the rent for the equipment was to be paid by Hub. The skidder was then picked up by Hub and delivered to Kenwisher at the logging site.

At the time of the rental agreement there was no agreement or discussion between plaintiff and defendant Hub about maintenance of the skidder. Plaintiff testified that upon delivery, the skidder had three gallons of "anti-freeze" in it, which would not evaporate.

In early December 1972, there was severe cold weather. Plaintiff called Lawson at his office to express concern about the skidder and a "cat" also rented by him to Hub. Lawson went to check the "cat" and

---

[1] At the close of plaintiff's case an involuntary nonsuit was granted to defendant Kenwisher, who is not a party to this appeal.

plaintiff went to check the skidder at the place where it was being used. According to his testimony, when he arrived there were icicles hanging from it and it "had probably been frozen for quite some time."

The next morning plaintiff called Lawson to say that "he thought the radiator was broke and he didn't know what else," according to Lawson, who then arranged for repairs to be made despite the fact that, according to him, plaintiff did not ask him to repair it. Lawson also testified that in December, after the skidder had frozen and was unusable, he told plaintiff that "we would have to terminate that contract" and that plaintiff "didn't say anything." Plaintiff denied that conversation and testified that he told Lawson that he "wanted the machine returned as it was when it went out."

In any event, Hub made repairs to the cooling system of the machine, but did not redeliver it to plaintiff until early February. It then developed that the engine block had been cracked. Hub again took the equipment back to its shop, installed a new motor, and returned it to plaintiff on or about April 10, 1973.

Plaintiff testified that the engine block cracked because of a lack of sufficient anti-freeze or a failure to drain the radiator. Defendant Hub contended that if there had been sufficient anti-freeze in the radiator when the skidder was delivered to it by plaintiff the engine would not have frozen.

1. *Defendant's affirmative defenses.*

Defendant Hub first assigns as error the sustaining of plaintiff's demurrer to two affirmative defenses alleged in its original answer.

■ Plaintiff's only response to this assignment is to contend that upon "pleading over" by the filing of an

amended answer defendant waived its right to assign as error the sustaining of a demurrer to these affirmative defenses alleged in its original answer. Such a contention was rejected in *Moore v. West Lawn Mem'l Park*, 266 Or 244, 248, 512 P2d 1344 (1973), overruling previous decisions to the contrary.

The first affirmative defense in defendant's original answer alleged that the skidder became "totally unusable" as a result of weather conditions which were so "unprecedented" and "unforeseen" as to constitute an "Act of God" and that this terminated the lease.

■ Defendant contends that the obligation to pay rent under a lease of personal property may be terminated not only by its total destruction, but also by damage which renders such property "totally unusable," at least in the absence of fault or want of care by the lessee. See *New York, L. E. & W. R. Co. v. New Jersey Electric Ry Co.*, 60 NJL 338, 38 A 828 (1897). In any event, a lessee of personal property has a duty to return it to the lessor in good condition, unless otherwise provided by contract or unless its failure to do so is excused as not being due to its fault or want of care. *National Fire Ins. Co. v. Mogan et al*, 186 Or 285, 289, 206 P2d 963 (1949).

■ Thus, defendant was entitled to plead as an affirmative defense facts showing that damage to this equipment was not due to its fault or want of care, but was the result of weather conditions which were so "unprecedented" and "unforeseen" as to constitute an "Act of God" which was the sole cause of the damage to the equipment, so as to relieve defendant from responsibility for damage to the equipment (cf. *Schweiger et ux v. Solbeck et ux*, 191 Or 454, 464-65, 230 P2d 195 (1951)). Thus, the trial court erred in sustaining plaintiff's demurrer to this affirmative defense.

In this case, however, defendant was permitted to

amend its answer to allege, again as an affirmative defense, that the skidder was totally destroyed and rendered unusable by a cold snap and that such destruction was not caused by defendant's negligence. That defense, which was a proper one if supported by substantial evidence, did not require that defendant sustain the more difficult burden of proof that the "cold snap" was so extraordinary and unforeseeable as to constitute an "Act of God" which was the sole cause of the damage. See *Schweiger et ux v. Solbeck et ux, supra* at 464.

ORS 19.125(2) provides that "No judgment shall be reversed * * * except for error substantially affecting the rights of a party." In our opinion, defendant suffered no substantial prejudice from the sustaining of the demurrer to the affirmative defense as originally alleged.

The second affirmative defense to which plaintiff's demurrer was sustained alleged that on or about December 12, 1972, defendant notified plaintiff that the skidder "was of no use due to its damage"; that Hub "did not desire to use" it and "thus terminated any liability to pay rent."

■ It is well established that a lease of personal property for an indefinite period of time is ordinarily terminable at any time at the will of either party. See *Sawman Oil Co., Inc. v. Bush,* 136 SW2d 938, 940 (Tex Civ App 1940); *Karp v. Perry,* 164 NYS 685 (S Ct 1917).

■ It is equally well established, however, as discussed below, that such a lessee ordinarily has a duty to return the leased property upon termination of the lease. *Nat. Cash Reg. Co. v. I.M.C., Inc.,* 260 Or 504, 509-10, 491 P2d 211 (1971); cf. *National Fire Ins. Co. v. Mogan et al, supra* at 289. In addition, it is held by most courts which have considered the question that if

the lessee does not do so the lessor may elect to treat the lessee's continuance in possession as a renewal of the lease and demand payment of rent at the agreed rental rate for the entire period during which the lessee retains possession of the property. See Annot., 144 ALR 1024 (1943), and cases cited therein. Indeed, this was the theory of the plaintiff in this case and the theory upon which the case was submitted to the jury.

■ It is conceded by defendant Hub that even after it claimed to have given notice to plaintiff in early December 1972 that it was terminating the lease, defendant nevertheless did not return the equipment to plaintiff until February. It follows, in our judgment, that regardless of whether defendant was liable for rent for the subsequent period from February to April, the giving of notice to terminate the lease in December 1972 in and of itself would not have been sufficient to relieve defendant from the obligation to pay at least some further rent, at least unless defendant was able to establish that the damage to the equipment which caused it to be "totally unusable" was not due to defendant's fault or want of care.

The affirmative defense alleged in defendant's original answer was that the giving of notice alone was sufficient to terminate this lease. Defendant's amended answer alleged as an affirmative defense that the damage to the machine was due to plaintiff's fault (rather than defendant's fault) and that defendant then notified plaintiff of the damage.

It follows again, in our opinion, that under the facts of this case any error in sustaining the demurrer to the affirmative defense as originally pleaded did not substantially affect the rights of this defendant.

2. *The instruction that either plaintiff was entitled to rent for the period that defendant had the equip-*

*ment or defendant was entitled to recover on its counterclaim for repairs.*

Defendant Hub assigns as error an instruction that "either plaintiff is entitled to recover for rentals for the period of time that the defendant had the equipment or the defendant is entitled to recover for cost of repairs, one or the other."

■ First of all, defendant's assignment of error does not set forth the exception taken by it to this instruction at the time of trial, as required by Rule 6.18 of the Rules of Procedure of this court. Accordingly, we could completely disregard this assignment of error. See *Wynn v. Sundquist,* 259 Or 125, 130-31, 485 P2d 1085 (1971); and *Clubb v. Hanson,* 272 Or 236, 536 P2d 528 (1975). Because, however, this assignment of error goes to the heart of this case, we shall consider it.

In order to properly consider the question whether the court erred in giving this instruction it is necessary to consider both the validity of plaintiff's theory of the case and the instructions as a whole, which were based upon an acceptance of that theory of the case.

As previously stated, plaintiff's theory of this case is that regardless of whether defendant attempted to terminate the lease either by notice in December or by return of the equipment in February, defendant had a duty not only to return the equipment, but to return it in good condition (except for damage not due to its negligence or fault) and that, as a result, plaintiff was entitled to demand not only that defendant make proper repairs to the equipment at its own expense, but that defendant pay rent for the entire period during which it had possession of the equipment, including the period from February to April during which it had the equipment for the purpose of completing the repairs by installing a new motor.

The validity of this theory, however, particularly insofar as it would support recovery for the period from February to April, rested upon the assumption that the damage to the equipment when it froze was due to the fault or want of care of defendant Hub rather than the result of any fault by plaintiff. On the other hand, if this damage was the result of plaintiff's own fault then defendant was not required to repair the equipment and was not liable for payment of rent during the period of such repairs, but was entitled to recover on its counterclaim for the cost of such repairs, all as contended by defendant.

The instructions by the trial court properly explained these contentions by the parties to the jury and the instruction excepted to, which was given at the end of the instructions on that subject, was intended as a summary of the legal effect of the contentions of the two parties. It follows that if plaintiff's legal theory of the case was valid there was no error in the giving of that instruction.

This court has never had occasion to consider the legal question presented by plaintiff's theory of this case. As previously noted, we have held under different facts that one who leases personal property may have a duty to return it to the owner on the termination of the lease. See *Nat. Cash Reg. Co. v. I.M.C., Inc., supra.* We have also held that a lessee of such property has the duty of a bailee to return the equipment to the owner in good condition. Thus, in *National Fire Ins. Co. v. Mogan et al, supra* at 289-90, we said:

"As bailee it was the duty of the defendants to return the compressor to the bailors in good condition, and for their failure to do so they would be liable to respond in damages to the bailor unless such failure was excused as not being due to the fault or want of care of the bailees. Commercial Dispatching Corp., cases, supra [*Willamette Tug &*

*Barge Co. v. Commercial Dispatching Corp.,* 180 Or 657, 178 P2d 698 (1947) ; *Western Transportation Co. v. Commercial Dispatching Corp.,* 180 Or 665, 178 P2d 702 (1947)] Hansen v. Oregon-Wash. R. & N. Co., 97 Or. 190, 188 P. 963, 191 P. 655."

See also *Carte v. Flury Buick-Jeep, Inc.,* 264 Or 479, 490-91, 506 P2d 701 (1973).

The problem presented by this case involves the remedies available to the owner-lessor for breach of that duty by the lessee-bailee and, in particular, whether such remedies include the right to demand payment of rent for the period during which the lessee-bailee retains the property for the purpose of making repairs necessary to restore it to good condition.

In *National Fire Ins. Co. v. Mogan et al, supra* at 290, we said:

"The bailors had a choice of remedies. They might either have maintained an action of assumpsit for breach of the contract or sued in tort charging negligence. When the action is for breach of the contract it is sufficient to allege the bailment and failure of the bailee to return the property. And upon proof of these facts a presumption of negligence on the part of the bailee arises. * * *"

It will be noted that if this statement is considered as a statement of the exclusive remedies available to the owner-bailor the choice of remedies available to him does not include the remedy of electing to consider the lease, including the obligation to pay rent, as extended during the period of continued possession prior to return, much less during a period of further possession for the purpose of making repairs.

■ But, as previously stated, there is substantial authority, with which we agree, to the effect that a lessor-bailor of personal property has a right to elect between treating the failure of the lessee-bailee to return

the property and his retention of possession as a continuation of the original lease and pursuing his remedy for breach of contract or in tort. See Annot., 144 ALR 1024 (1943), and cases cited therein.

As applied to the facts of this case, such a rule supports plaintiff's theory of recovery of rental payments for the period to and until the first return of the equipment by defendant to plaintiff in February, at least unless the jury found that the damage to the equipment was due to the fault of plaintiff rather than that of defendant. The more serious question, however, is whether such a rule can properly be applied to support recovery of rent for the equipment for the period from February to April, during which defendant again took possession of the equipment for the purpose of installing a new engine, apparently in order to comply with plaintiff's demand that the equipment be restored to good condition and even assuming that the jury could find that this damage to the equipment was due to the fault or want of care of the defendant.

In *Pacific Bridge Co. v. Riverside Rock Co.,* 70 Or 337, 141 P 751 (1914), this court considered a claim for rent under a written lease of a steam shovel which expressly required its return in good condition and provided for payment of a rental of $10 per day until its return. The equipment was damaged, apparently as a result of the negligence of defendant, the lessee-bailee. Defendant shipped it to a repair shop and repaired it at a cost of $2,677. It was then returned to plaintiff, who sued for rental at the contract rate for the entire period until its return. In affirming such a judgment for plaintiff this court said (at 341):

"* * * If the shovel had been sent home injured or out of repair, plaintiff would not have been required to receive it, or might have received it and recovery had on the contract for damages for its defective condition. It was a plain requirement of

the contract that the shovel should be returned at the expiration of the lease, and that for delay defendant should pay $10 per day, and it contemplated that defendant should maintain its operating condition and equipment, ordinary wear and tear excepted."

In *Knickerbocker Trust Co. v. Ryan,* 227 Pa 245, 75 A 1073 (1910), a case involving somewhat more similar facts, the court considered a lease of railroad cars which gave the lessee an option to terminate the lease, but provided for a rental of $5 per day per car until their return. The lessee exercised its option to terminate the lease, but the lessors demanded that lessee "hold the cars on your track" until certain repairs were made. The lessee made such repairs and then returned the cars. The lessors sued for rental, including the entire period during which the cars were held by the lessee for repairs.

The court construed the lease as requiring the lessee to make only such repairs as were not caused by ordinary wear and tear during the continuance of the lease (i.e., such repairs as were not due to its fault or want of care). It also approved the submission of the case to the jury under instructions to the effect that "plaintiffs were entitled to a verdict [for rental payments during the period of repairs] if the repairs and replacements were such as the lessees were required to make" (i.e., such repairs as were due to its fault or want of care), but not if they were the result of ordinary wear and tear. Under these instructions the jury returned a verdict for the defendant and the resulting judgment was affirmed.

We recognize that both *Pacific Bridge* and *Knickerbocker Trust* involved written contracts which expressly provided for payment of rent until return of the equipment. Thus, the plaintiffs in those cases were

not required to proceed on a theory of electing to treat the continued possession of the property as an extension of the lease, but proceeded directly by action to enforce payment as provided by such terms of the lease.

Regardless of this distinction, it is of interest to note that if the plaintiff in this case had chosen to sue under the lease for rent only for the period until either the alleged notice of termination in December or the initial return of the equipment in February, he still could have joined in the same complaint an action for damages for breach of contract for failure to return the equipment in good condition and the measure of damages in that action could have included the rental value of the equipment during the period during which repairs were being made to restore it to good condition.

Thus, as the rule is stated in 144 ALR, *supra* at 1030:

> "Instead of electing to treat the contract as continuing, the bailor may prefer to treat the agreement as terminated and to sue for the reasonable rental value of the chattel bailed for the period the bailee continued in its possession after the original contract had ended. [Citing cases]
>
> "* * * * * *
>
> "Electing to sue for the reasonable rental value of the thing bailed as damages, instead of electing to treat the contract as continuing, will be more advantageous for the bailor where the rental value of the thing exceeds the compensation stipulated in the contract of bailment."

As also stated in 169 ALR 1074, 1088, and 1092 (1947), when the owner of a commercial vehicle which has lost its use during a period of repairs is entitled to recover for damage to the vehicle he is also entitled

to recover, among other things, the value of the use of the vehicle during the period reasonably required to make such repairs and the loss of such use may be measured by the rental value of the vehicle. See also *Williams v. International Co.*, 172 Or 270, 284-85, 141 P2d 837 (1943),[2] and *Stubblefield v. Montgomery Ward & Co.*, 163 Or 432, 448, 96 P2d 774, 98 P2d 14 (1939).

■ It follows that if the jury properly found, as it was entitled to find and apparently did find, that the repairs to this equipment were necessary because of damage due to the fault or want of care of the defendant, plaintiff then was entitled to recover from defendant the rental value of the equipment during the entire period of its possession by defendant, including the period from February to April, regardless of whether plaintiff was entitled to recover rent, as such, for that period. Defendant is hardly in a position to contend that it took more than the time reasonably required to complete the repairs.

On the other hand, defendant would not have been liable for payment of either rent or rental value if the jury had found that defendant was not responsible for the damage in December 1972 which made the equipment "totally inoperable," so as to result in a termination of the lease either at that time, upon notice to plaintiff, or upon the initial return of the equipment in February.

Plaintiff's amended complaint in this case alleged that "the agreed upon rate of $600 per two weeks is a reasonable value of the use" of the machine, although seeking to recover $5,400 as "rental" for the equipment. Evidence was also offered in this case to the effect that the rental value of the equipment equalled

---

[2] Overruled on other grounds in *Rogue Val. Mem. Hosp. v. Salem Ins.*, 265 Or 603, 615, 510 P2d 845 (1973).

or exceeded the sum of $1,200 per month, the amount of the agreed rental, according to plaintiff's testimony, and exceeded the sum of $600 per month, which defendant claimed to be the agreed rental.

■ Under this evidence, and regardless of whether plaintiff was entitled to "elect" to extend the period of the lease to and until April so as to include the entire period of repairs and so as to demand payment of rent, as such, for that entire period, he was entitled to payment of damages in an equal amount on a theory of breach of contract if the jury found, as it apparently did, that defendant was responsible for the damage and for the resulting repairs.

For these reasons, we hold that the trial court did not err in instructing the jury that either plaintiff was entitled to rent for the period of time that defendant had the equipment or defendant was entitled to recover its counterclaim for repairs.

3. *Other instructions.*

■ Plaintiff also assigns as error the refusal of the trial court to give defendant's requested instruction to return a verdict in favor of defendant on its counterclaim for the cost of repairs. The trial court did not err in refusing to give that instruction. This is so because the question whether plaintiff or defendant was responsible for the cost of repairs depended upon whether such repairs were due to the fault or want of care of defendant and that was a question of fact for the jury. See *National Fire Ins. Co. v. Mogan et al, supra* at 290-92.

■ Neither was it error to refuse defendant's request that the jury make a special finding whether the damage to the skidder was caused by the negligence of Hub. This is so because the giving or refusal of such a request for a special finding is a matter within

the discretion of the trial judge and there was no abuse of that discretion in the refusal to give this instruction. See ORS 17.415 and *Rennewanz v. Dean,* 114 Or 259, 263, 229 P2d 372 (1924).

4. *Rulings on evidence.*

*The original complaint—Hub's contract with Kenwisher.*

■ Defendant assigns as error the sustaining of plaintiff's objection to the offer in evidence by defendant Hub of plaintiff's original complaint in which plaintiff alleged that his rental agreement was with defendant Kenwisher alone. That original complaint was sufficiently inconsistent with plaintiff's amended complaint, which alleged an agreement with both Hub and Kenwisher, so as to make it admissible as a prior inconsistent statement. Because, however, the witnesses for defendant Hub admitted that it was responsible for payment of the rental for the equipment, any such error was not prejudicial, in our opinion.

■ We also believe that there was no prejudicial error in rejecting defendant Hub's offer in evidence of its contract with Kenwisher. We fail to see that this contract had any substantial relevance to the issues between plaintiff and defendant Hub. For similar reasons, it was not error to sustain an objection to a question on cross-examination of plaintiff inquiring whether defendant Kenwisher agreed with plaintiff to follow his instructions for maintenance of the equipment. Defendant's answer did not allege that plaintiff was negligent in failing to make proper arrangements for maintenance of the equipment, but that he impliedly warranted that it was fit for use during the winter months when in fact it had insufficient anti-freeze.

*The "summary" of Hub's repair records.*

■ The trial court also did not err in sustaining

plaintiff's objection to a "summary" of Hub's records purporting to show the time devoted by its employees to the repair of the skidder. In order for a "summary" of accounting records to be admissible, all of the original records which set forth the facts and figures which are the basis for such a "summary" must be produced in court for inspection by the opposing party for the purpose of verifying the accuracy of the "summary." See ORS 41.640(1)(e); McCormick on Evidence 2d 564, § 233 (1972). That requirement was not satisfied by defendant in that the only records which showed the time devoted in any particular day by particular employees to work on this equipment were not produced, but only the general time records, which did not set forth this information.

The only remaining ruling on evidence assigned as error—the sustaining of an objection to a question inquiring whether plaintiff had other uses for the skidder—has no merit. Under plaintiff's theory of the case he was entitled to recover either rent or the rental value of the equipment during the period that defendant had its possession, regardless of whether plaintiff then had any other use for it. While that fact may have had some relevance on the question of rental value, we do not believe that its probative value was sufficient so as to result in prejudicial error.

5. *Allowance of interest prior to date of judgment.*

The trial court erred in allowing interest on the amount of the jury verdict of $5,400 from April 10, 1973, the date of the final redelivery to plaintiff of the skidder, to the date of the judgment. Plaintiff's complaint did not plead facts to establish a claim for interest prior to the entry of judgment and the prayer of the complaint did not ask for an allowance of interest, as required by our previous decisions. See *Lithia Lumber Co. v. Lamb,* 250 Or 444, 447, 443 P2d 647

(1968), and *Southern Pac. Co. v. Oregon etc. Assn.*, 127 Or 364, 386, 272 P 281 (1928).

That portion of the judgment of the trial court allowing interest to the date of the judgment must therefore be deleted. In all other respects the judgment of the trial court is affirmed.

Affirmed as modified.