Argued and submitted September 3, 1981, affirmed April 6, 1982

DUCOSIN,
*Petitioner on Review,*
*v.*
MOTT,
*Respondent on Review.*

(No. 77-4-184,   CA 16290,   SC 27657)

642 P2d 1168

Robert J. Morgan, Portland, argued the cause for petitioner on review. With him on the brief was Emil Berg, Portland.

John C. Anicker, Jr., Oregon City, argued the cause and filed the brief for respondent on review.

Before Denecke, Chief Justice, and Tongue,** Lent, Linde,*** Peterson, Tanzer and Campbell, Justices.

DENECKE, C. J.

---

** Tongue, J., retired February 7, 1982.

*** Linde, J., did not participate in the decision in this matter.

## DENECKE, C. J.

The principal issue is whether a defamatory communication made to a county medical examiner suggesting a possible homicide is absolutely privileged. The trial court held that it was not, found the defendant acted maliciously, and awarded the plaintiff damages. The Court of Appeals held the communication was absolutely privileged and reversed. 49 Or App 369, 619 P2d 678 (1980), 50 Or App 207, 622 P2d 763 (1981). We affirm the Court of Appeals.

There was animosity and litigation between the parties caused by the defendant's father bequeathing property to plaintiff's mother. The mother died in a nursing home where the plaintiff worked. The defendant called the county medical examiner and according to the testimony of the examiner suggested to the examiner that the plaintiff "possibly administered inappropriate amounts of medication to Mrs. Mangold [plaintiff's mother], leading to her death." As a result of the call the examiner postponed the cremation of the mother, notified the district attorney, and had an autopsy performed. As a result of the autopsy the examiner certified the cause of death as natural.

If there is an absolute privilege, it is because the communication was made in a "judicial proceeding." "Judicial proceeding" has been defined more broadly than the phrase itself may imply. *Ramstead v. Morgan,* 219 Or 383, 388-394, 347 P2d 594 77 ALR2d 481 (1959). The Restatement of Torts § 587, which we have cited with approval in several cases including *Ramstead v. Morgan, supra,* at 394, states that communications are absolutely privileged when made "preliminary to a proposed judicial proceeding, or in the institution of * * * a judicial proceeding."

The defendant contends that this case is governed by *Ramstead v. Morgan, supra.* In *Ramstead* we held that a letter defamatory of the plaintiff, a member of the bar, written by the defendant to the bar grievance committee, was absolutely privileged. We reasoned that the communication was to institute a quasi-judicial proceeding, that is, to cause the bar to investigate the charges made in the letter. We used the same reasoning in *Moore v. West Lawn Mem'l Park,* 266 Or 244, 512 P2d 1344 (1973), in which the

defendant wrote a defamatory letter to the State Board of Funeral Directors to which the plaintiff was applying for a license as a funeral director. The defendant argues that the instant case is similar because the communication by the defendant to the medical examiner would cause an investigation to be made of the cause of death of the decedent with a possible criminal charge being instituted as a result of the investigation. ORS 146.090 and following.

Plaintiff contends the present case falls within the principle stated in Restatement (Second) of Torts § 598, which states:

"An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

"(a) there is information that affects a sufficiently important public interest, and

"(b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true."

A portion of Comment e. to § 598, however, states:

"Testimony offered before investigating committees, commissions and other bodies properly authorized to conduct investigations is conditionally privileged unless the investigation is a judicial or a legislative proceeding, in which case the testimony is abolutely privileged. (See §§ 588 and 590A). Formal or informal complaints to a prosecuting attorney or other law enforcement officer concerning violations of the criminal law are absolutely privileged under the rule stated in § 587."

The plaintiff counters the assertion that this case falls within § 587 with a reference to Comment e. of § 587, as added in the Restatement (Second):

"As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered."

It must be remembered that the Restatement is not a statute which we are bound to accept in its entirety. We can accept or reject all or any part of the black letter portion or all or any part of the explanatory comment.

We are of the opinion that our analysis in *Ramstead v. Morgan, supra,* 219 Or 383, is a better criterion than whether a judicial proceeding is a "bare possibility" or "under serious consideration" as suggested in Comment e. to § 587. In *Ramstead* we stated:

> "The absolute privilege to publish defamatory matter under the circumstances to which the privilege applies is based upon the ground that 'there are certain relations of life in which it is so important that the persons engaged in them should be able to speak freely that the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly, and in order that their duties may be carried on freely and without fear of any action being brought against them, it says: ' "We will treat as absolutely privileged any statement made in the performance of these duties." ' * * *." *Ramstead v. Morgan, supra,* 219 Or at 387.

We relied upon the same principle in *Moore v. Westlawn Mem'l Park, supra,* 266 Or at 249. In essence, in *Ramstead* we concluded that it is so important that lawyers guilty of misdeeds be disciplined that complaints of misdeeds made to appropriate bar groups be cloaked with an absolute privilege. Similarly, in *Moore* we concluded that it is so important that only qualified persons be licensed as funeral directors that communications to the licensing board concerning an applicant be cloaked with an absolute privilege.

■ Applying this analysis to the instant case, it is apparent that communications to a medical examiner suggesting a possible homicidal cause of death should be cloaked with an absolute privilege. For centuries society has considered it important that a criminal act causing death not go undetected. The principal duty of the ancient office of coroner concerned "inquiries touching the manner of death of any person slain, or dying suddenly or in prison * * *." *Cox v. Royal Tribe,* 42 Or 365, 369, 71 P 73, 60 ALR 620 (1903). Local governments in the United States, including those in Oregon, retained this office. The name has

been changed to "medical examiner" but the function has remained the same. ORS 146.003 and following.[1] A device used to determine the cause of death, the "coroner's inquest," has been retained in Oregon, now, however, to be conducted by the district attorney. ORS 146.135.

The public importance of disclosing that a death was caused by criminal means is at least as high on the scale of importance to society as the disclosure of unethical practice by a lawyer or the disclosure of the misdeeds of an applicant for a license as a medical director.

---

[1] ORS 146.090: "The medical examiner shall investigate and certify the cause and manner of all human deaths:

"(1) Apparently homicidal, suicidal or occurring under suspicious or unknown circumstances;

"(2) Resulting from the unlawful use of controlled substances or the use or abuse of chemicals or toxic agents;

"(3) Occurring while incarcerated in any jail, correction facility or in police custody;

"(4) Apparently accidental or following an injury;

"(5) By disease, injury or toxic agent during or arising from employment;

"(6) While not under the care of a physician during the period immediately previous to death; or

"(7) Related to disease which might constitute a threat to the public health."

ORS 146.095: "(1) The district medical examiner and the district attorney for the county where death occurs, as provided by ORS 146.100(2), shall be responsible for the investigation of all deaths requiring investigation.

"(2) The medical examiner shall certify the manner and the cause of all deaths which he is required to investigate. The certificate of death shall be filed as required by ORS 432.307.

"(3) The medical examiner shall make a report of death investigation to the State Medical Examiner as soon as possible after being notified of a death requiring investigation.

"(4) Within five days after notification of a death requiring investigation, the medical examiner shall make a written report of the investigation and file it in the district medical examiner's office.

"(5) The district medical examiner shall supervise the assistant district medical examiners and deputy medical examiners in cooperation with the district attorney.

"(6) The district medical examiner shall regularly conduct administrative training programs for the assistant district medical examiners, deputy medical examiner and law enforcement agencies."

Analogous cases are those in which the defendant made a defamatory complaint to the prosecuting attorney. "Although there is some authority to the contrary, the better view seems to be that an informal complaint to a prosecuting attorney or a magistrate is to be regarded as an initial step in a judicial proceeding, and so entitled to an absolute, rather than a qualified immunity." Prosser, Law of Torts § 114, pp 780-781 (4th ed 1971). "Formal or informal complaints to a prosecuting attorney or other law enforcement officer concerning violations of the criminal law are absolutely privileged under the rule stated in § 587." Restatement of Torts (Second) § 598, Comment e.

■ We hold the statement made by the defendant was absolutely privileged.

Affirmed.