Argued and submitted April 30, reversed and
remanded for new trial December 8, 1982

# NORTHSTAR BROADCASTING, INC.,
*Respondent,*
*v.*
# TACHER COMPANY, INC.,
*Appellant.*

(No. A7908-03740, CA A20886)

655 P2d 200

Arden E. Shenker, Portland, argued the cause for appellant. With him on the briefs were Elizabeth A. Trainor, Michael J. Gentry and Tooze, Kerr, Marshall & Shenker, Portland.

Sidney E. Ainsworth, Ashland, argued the cause for respondent. On the brief were Jack Davis and Davis, Ainsworth, Pinnock, Davis and Gilstrap, P.C., Ashland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

In this breach of contract action, defendant appeals a judgment awarding plaintiff compensatory damages for profits lost as a result of defendant's breach. Defendant argues that some of plaintiff's evidence of lost profits was inadmissible and that, even if properly admitted, the evidence was not sufficient to submit plaintiff's claim to the jury. We find that one item of plaintiff's evidence of damages was improperly admitted, but the remaining admissible evidence was sufficient to raise a jury question. Consequently, we remand for a new trial on the damages issue only.

Plaintiff is a broadcasting company that purchased radio station KMED in Medford, Oregon, in August, 1977. Defendant is a "regional advertising representative," an entity that sells advertising time to advertisers and advertising agencies on behalf of radio stations. Plaintiff and defendant entered into a contract on July 29, 1977, for defendant to act as plaintiff's regional advertising representative for two years, securing advertising in the Portland and Seattle areas to be aired on plaintiff's newly purchased radio station. In exchange for its services, defendant was to receive 15 percent of the gross billings it generated.

In January, 1978, approximately six months into the contract, defendant breached.[1] Plaintiff brought this action, alleging that defendant's performance would have generated income over the life of the contract of $100,000, less defendant's 15 percent commission, or $85,000. It alleged that it had received $11,262.36 during the time that defendant performed, entitling it to judgment for $73,737.64. The jury returned a verdict for plaintiff for $18,600, and defendant appeals.

In an effort to establish the existence and amount of profits lost as a result of defendant's breach, plaintiff introduced the "Commission Statements" of Simpson, Reilly & Associates (Simpson), the regional advertising representative for the previous owners of KMED, Sierra

---

[1] Although at trial defendant attempted to establish mutual rescission, it does not appeal the jury's finding that it breached the contract.

Cascade Communications, Inc. (Sierra). Those statements showed the amount that Simpson had made for Sierra during the one and one-half years before plaintiff's purchase of the station, January, 1976, through July, 1977. Simpson had sent the commission statements to Sierra monthly. They indicated the gross advertising income Simpson had generated for the station, the amount of commission due and the net income after commissions. Plaintiff introduced Simpson's commission statements through the testimony of Joanne Burch, Sierra's bookkeeper. Ms. Burch testified that as she received the statements, she had checked them for accuracy against the billings she had prepared and made additional notations on them, based on Sierra's own records, to show the breakdown of revenues attributable to KMED and those attributable to an FM station that Sierra also owned. She testified that she was the custodian of the records after their receipt and that she had processed them in the ordinary course of business.

Defendant objected to the introduction of the commission statements on two grounds: first, the statements did not meet the requirements of the Uniform Business Records as Evidence Act, former ORS 41.690 (repealed by Or Laws 1981, ch 892, § 98), and therefore were inadmissible hearsay; and, second, the notations that Ms. Burch made on the statements were inadmissible, because they were summaries of accounting records and because the records on which those summaries were based were not produced in court for defendant's inspection. Defendant is correct on both grounds.

■ Former ORS 41.690, under which the commission statements were admitted, provided:

"A record of an act, condition or event, shall, in so far [sic] as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The statute required a custodian or other qualified witness to testify to the record's identity and the mode of its preparation. Assuming that the other requirements of the

statute were met here, the commission statements were not admissible through Ms. Burch's testimony, because she was not competent to testify to the "mode of [their] preparation." She may have been a "custodian or other qualified witness," in that she kept the statements as records after Sierra received them, but neither Ms. Burch nor her employer prepared the records; Simpson did. Nothing in the record indicates that Ms. Burch had personal knowledge of the manner in which Simpson prepared this type of statement. The statements were not admissible through her testimony.

Plaintiff relies on *Rolfe v. Northwest Cattle & Resources, Inc.,* 260 Or 590, 491 P2d 195 (1971), which held that the recipient of freight bills could introduce them as business records through the testimony of one of its employees. The court did not focus on the "mode of * * * preparation" language in ORS 41.690. It did observe, however, that the individual through whose testimony the bills were introduced "had personal knowledge of the facts relating to the shipments of cattle represented by the freight bills. * * *" 260 Or at 605. Here, Ms. Burch did not testify to personal knowledge of the facts on which the statements were based or the mode of the statements' preparation. *Rolfe* does not help plaintiff.

■ ■ The commission statements were inadmissible for an additional reason. Ms. Burch had made notations on the statements indicating what part of the sales was for AM time and what part for FM time. This breakdown is critical, because plaintiff owns only the AM and not the FM station. The notations were summaries taken from Sierra's own billing records. Summaries of accounting records are admissible as an exception to the "best evidence" rule, ORS 41.640(1)(e),[2] but the original records on which the summaries are based must be produced in court for inspection

---

[2] Former ORS 41.640(1)(e) (repealed by Or Laws 1981, ch 892, § 98) provided:

"There shall be no evidence of the contents of a writing, other than the writing itself, except:

"* * * * *

"(e) When the originals consist of numerous accounts, or other documents, which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole."

by the opposing party so that the accuracy of the summary may be verified. *See Shepherd v. Hub Lumber Co.*, 273 Or 331, 349, 541 P2d 439 (1975). Here, plaintiff did not produce the billing records on which the summaries were based, and the statements containing the summaries were inadmissible for that additional reason.

■     At the close of plaintiff's case, defendant moved for a directed verdict on the ground that the evidence of lost profits was too speculative and therefore was not sufficient to raise a jury question. In addition to the Sierra commission statements, plaintiff introduced its records of the income defendant had produced for the station during the six months when it had performed under the contract. Because we have held that the commission statements were not properly admitted, we must consider whether this remaining evidence of lost profits was sufficient to raise a jury question on the damages issue.

ʻ Defendant argues that, because plaintiff's business was "new," a record of profits during the first six months cannot support a verdict for plaintiff. However, plaintiff's evidence did not simply establish a generalized record of profitable operation for the first six months of a new business. Its records showed the amount defendant had generated for plaintiff over the period during which it had performed under the contract. It showed precisely what defendant was able to do when it performed. Especially in this type of contract, analogous to a personal service contract, defendant's track record before its breach is one of the most reliable indicators of the income it would have continued to produce. Under these circumstances, the records for the first six months could have supported a jury verdict.

■     Defendant again moved for a directed verdict at the close of all the evidence, arguing that plaintiff could not recover, because plaintiffs' efforts to mitigate were not reasonable as a matter of law. Defendant's evidence showed that there were six or seven regional representatives in the Pacific Northwest. It argues that, had plaintiff secured the services of a regional representative, it would have made more money than it did by doing its own selling. That may be true, but plaintiff's president testified that he had

contacted the two other regional representatives he thought might be available to represent the station and had been unable to secure their services. Consequently, plaintiff undertook to perform the sales function itself, through its own employees. We do not think that it was necessary for plaintiff to contact every regional sales representative in the Northwest in order to raise a jury question on the reasonableness of its mitigation efforts.[3] The trial court did not err in refusing to direct a verdict for defendant.[4]

In summary, we conclude that the commission statements were inadmissible, but the remainder of plaintiff's evidence was sufficient to raise a jury question on damages. Because we are unable to determine what weight, if any, the jury gave to the inadmissible evidence, the case must be remanded for a new trial on the damages issue only.

Only one of defendant's remaining assignments of error is likely to arise on retrial. Because of our disposition of the case, we need not address the others.

■ Defendant moved to strike plaintiff's claim for expenses incurred in mitigating damages, arguing that the "contract territory" was exclusively the Seattle and Portland areas but that plaintiff's evidence included expenses incurred in connection with sales made in Salem, Eugene, Bend and Roseburg. The court overruled defendant's motion, finding that, although the evidence was somewhat unspecific, that would go only to the weight of the evidence. Although it is a close question, defendant's motion should have been granted. Plaintiff's exhibit clearly showed expenses for what it termed "regional advertising," which

---

[3] We express no opinion as to defendant's assertion that plaintiff's failure to mitigate, if established, would have precluded a damages award, rather than have simply reduced the amount of damages. *Compare, Enco, Inc. v. F.C. Russell Co.,* 210 Or 324, 311 P2d 737 (1957) *with Kulm v. Coast-to-Coast Stores,* 248 Or 436, 432 P2d 1006 (1967).

[4] On appeal, defendant also argues in support of its motion for directed verdict that plaintiff's damages evidence was insufficient because it failed to account for expenses that would have been incurred had defendant performed. Plaintiff responds that it would have had no added expenses had defendant performed, beyond those incurred in simply operating the radio station. We do not reach this issue, however, because defendant's motion for directed verdict did not specify this particular ground. *See* ORCP 60; *Vancil v. Poulson,* 236 Or 314, 388 P2d 444 (1964) (objection that "there is not sufficient evidence here to go to the jury" was not sufficient to raise specific ground).

included advertisers throughout the Willamette Valley. There was no breakdown of expenses attributable to the Portland and Seattle markets. Absent such a breakdown, plaintiff's evidence was insufficient to submit the mitigation expense claim to the jury.

Reversed and remanded for a new trial on the issue of damages only.