**TILLAMOOK COUNTRY SMOKER, INC., an Oregon corporation, Plaintiff,**

v.

**Teresa J. WOODS and Kwik Snax, Inc., an Oklahoma corporation, Defendants.**

**Civ. No. 89–1052–FR.**

United States District Court, D. Oregon.

March 16, 1990.

Charles D. McClung, Dennis E. Stenzel, Chernoff, Vilhauer, McClung & Stenzel, Portland, Or., for plaintiff.

David H. Williams, Michael C. Lewton, Cosgrave, Vergeer & Kester, Portland, Or., for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is the motion (# 18) of defendants, Teresa J. Woods and Kwik Snax, Inc. (KSI), for summary judgment or, in the alternative, a stay of this action.

This is an action for libel brought by plaintiff, Tillamook Country Smoker, Inc. (Tillamook), against Woods and KSI. The action was initially filed in the Circuit Court of the State of Oregon for the County of Multnomah, but was removed to this court on the basis of diversity jurisdiction.

## UNDISPUTED FACTS

Tillamook is a corporation organized under the laws of the State of Oregon which manufactures specialty food items, primarily smoked meats. Woods is a citizen of the State of Oklahoma. KSI is a corporation organized under the laws of the State of Oklahoma which is engaged in the business of food distribution. Woods is the president and sole shareholder of KSI.

Beginning in April, 1983, KSI began purchasing goods from Tillamook, which KSI distributed in the States of Oklahoma and Texas. KSI was given rights to distribute Tillamook's products in southern Oklahoma and northern Texas. Subsequently, disputes over distribution rights and other issues arose between Tillamook and KSI, and by a letter dated November 28, 1988, A. Crawford Smith, the president of Tillamook, informed Woods that Tillamook would no longer do business with KSI.

The Small Business Administration (SBA), a federal agency, guaranteed a loan which had been made to Tillamook. The Federal Economic Development Administration (FEDA), a federal agency, funded or guaranteed a loan to Tillamook through the Oregon Economic Development Department (OEDD), an agency of the State of Oregon.

On November 23, 1988, Woods telephoned Dave Lasky, Chief of the Compliance Branch of the FEDA to ascertain the procedure for filing a claim of discrimination with the FEDA. Lasky advised Woods to put her complaint in writing and send it to Gary Ross, Finance Officer for the Business and Finance Division of the OEDD, and to copy the letter to Lasky. On November 30, 1988, Woods sent a letter to Ross which accuses Tillamook of discriminating against KSI because Woods is female.

On December 5, 1988, Woods telephoned John Sweeny, an official of the SBA, to ascertain the procedure for filing a claim of discrimination with the SBA. Sweeny advised Woods to put her complaint in writing and to forward the complaint to Arnold Feldman of the SBA's Office of Civil Rights Compliance. On December 5, 1988, Woods sent a letter to Feldman which sets out her contention that Tillamook discriminated against KSI because Woods is female, and which makes a claim of sexual discrimination against Tillamook.

Woods' letters of November 30 and December 5, 1988 form the basis of Tillamook's libel claims. On February 1, 1989, Mark D. Huston, Manager of the Business Finance Section of the OEDD, sent a letter to Lasky requesting that the FEDA assume the investigation of Woods' complaint and work in concert with the SBA to make a determination in the matter. There is no record of any further action by the OEDD or the FEDA.

On February 9, 1989, the Office of Civil Rights Compliance of the SBA sent Woods a letter denying her claim against Tillamook and finding that Woods' sex was not a factor in the actions taken by Tillamook. The letter informed Woods of her right to appeal the disposition within thirty days. On March 7, 1989, Woods filed an appeal

with the Office of Civil Rights Compliance of the SBA.

Meanwhile, on January 5, 1989, Tillamook filed an action against Woods, KSI and various other parties, seeking a judgment for money due and injunctive relief. On March 16, 1989, George Robinson, Director of the SBA's Office of Civil Rights Compliance, sent Woods a letter stating that since the matter was now before a court, the SBA no longer had jurisdiction and would not continue to pursue Woods' complaint of sex discrimination. On September 29, 1989, Robinson informed Woods that the complaint of sex discrimination would be reopened for further consideration.

This action was filed on August 24, 1989. On December 30, 1989, Woods requested an extension of time from the SBA in which to file her response regarding the discrimination complaint because she was uncertain whether any further statements would prejudice her defense of this libel action. On January 10, 1990, Robinson sent Woods a letter which denied her request for an extension of time, stating that the SBA was closing the complaint of sex discrimination with a finding of no discrimination. The letter also stated that the SBA had no further jurisdiction in the matter because Woods and Tillamook were in court on similar matters. On January 31, 1990, Woods sent Robinson a letter in which she stated her wish to enter an appeal of the decision of January 10, 1990.

## APPLICABLE LAW

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). Where different inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981).

## ANALYSIS AND RULING

Woods and KSI move for summary judgment on the grounds that Woods' letters of November 30 and December 5, 1988 are complaints to public agencies which act in quasi-judicial capacities, and the statements in the letters are therefore absolutely privileged. Tillamook contends that the OEDD and the SBA are not quasi-judicial agencies under the law of the State of Oregon, and that there is an issue of fact regarding the role of the FEDA in this matter. Tillamook argues that Woods and KSI are entitled at most to a qualified privilege, and that the record contains evidence which supports an inference that Woods and KSI acted with malice.

Under the law of the State of Oregon, an absolute immunity attaches to statements made in the course of or incident to a judicial proceeding. *Moore v. West Lawn Memorial Park*, 266 Or. 244, 249, 512 P.2d 1344 (1973). The granting of an absolute privilege to defame is based upon the ground that:

> there are certain relations of life in which it is so important that the persons engaged in them should be able to speak freely that the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly, and in order that their duties may be carried on freely and without fear of any action being brought against them, it says: "We will treat as absolutely privileged any statement made in the performance of these duties."

*Ramstead v. Morgan*, 219 Or. 383, 387, 347 P.2d 594 (1959).

The term "judicial proceeding" has been defined more broadly than the phrase itself may imply. *Ducosin v. Mott*, 292 Or. 764,

766, 642 P.2d 1168 (1982). Communications are absolutely privileged when made preliminary to a proposed judicial proceeding or in the institution of a judicial proceeding. *Id.* The act of presenting a complaint, even informally, to a prosecuting attorney or a magistrate is regarded as the initial step in a judicial proceeding, and so is entitled to an absolute rather than a qualified immunity. *Id.* at 770, 642 P.2d 1168.

The absolute privilege also applies to administrative agencies acting in a "quasi-judicial" capacity. The Oregon Supreme Court has held that complaints made to the Oregon State Bar Association, to the Oregon State Board of Funeral Directors, and to a county medical examiner are absolutely privileged. *Ramstead, supra; Moore, supra;* and *Ducosin, supra.*

Tillamook relies on the decision of the Oregon Supreme Court in *Demers v. Meuret,* 266 Or. 252, 512 P.2d 1348 (1973). In *Demers,* the Court held that statements made during a public meeting of the Airport Commission were subject to a qualified rather than an absolute privilege. The facts in that case are that Demers operated the airport at Madras, Oregon under a lease. A meeting of the Airport Commission was held to determine whether to cancel or renew the lease. The Court held that there was no evidence that the meeting of the Airport Commission was intended to make a quasi-judicial determination of any matter, or that the words spoken by the defendant would cause the Airport Commission to commence a quasi-judicial proceeding. *Id.* at 254–55, 512 P.2d 1348. The court held that the statements of the defendant were made to influence the Commission in a decision that was not of a judicial nature and were entitled only to a qualified privilege rather than an absolute privilege.

Tillamook argues that the decisions of the SBA, FEDA or OEDD regarding loans are more akin to the renewal of a lease than to the revocation of a license as in *Ramstead* and *Moore.* However, under Oregon law the essential factor is not the nature of the action prompted by a complaint, but whether the complaint is meant to initiate a judicial or a quasi-judicial action.

In other cases where the Oregon courts have denied an absolute privilege, the determination has rested on the non-judicial nature of the proceeding. For example, in *Cushman v. Day,* 43 Or.App. 123, 132, 602 P.2d 327 (1979), the defendant sent a telegram to a police chief which expressed an intent to file criminal charges against certain police officers, but did not request that an investigation or charges be set in motion. In *Grubb v. Johnson,* 205 Or. 624, 640, 289 P.2d 1067 (1955), the requested revocation of an insurance solicitor's license was a ministerial and not a judicial act.

■ Pursuant to 13 C.F.R. 113.1, recipients of loans from the SBA are prohibited from engaging in discrimination on the basis of sex. The Office of Civil Rights Compliance of the SBA is authorized to perform an investigation in response to complaints of prohibited discrimination. 13 C.F.R. 113.6; 13 C.F.R. 134.1 *et seq.* The SBA has the power to enforce compliance with the anti-discrimination provision by terminating or refusing financial assistance. Before such action is taken, the loan recipient must be given procedural due process, including an opportunity for discovery and a public hearing on the record. 13 C.F.R. 134.1 *et seq.* Woods' letter of December 5, 1988 asks the SBA to initiate such a quasi-judicial action. This is the type of complaint which is absolutely privileged under the law of the State of Oregon.

■ The FEDA is subject to a similar anti-discrimination provision and is also authorized to perform a quasi-judicial function to ensure compliance. 15 C.F.R. 8.1–8.15. A recipient of FEDA benefits is entitled to procedural safeguards, such as the right to a hearing on the record, the right to compel attendance of witnesses, and the right of judicial review. *Id.* A letter seeking to initiate a complaint of sex discrimination with the FEDA would be absolutely privileged, as is Woods' letter to the SBA.

However, Woods did not send a letter to the FEDA, but to the OEDD, which she contends is under contract with the FEDA to administer grant funds from the FEDA in the State of Oregon. Tillamook has not

controverted this assertion. It argues, however, that the OEDD does not have any mechanism to deal with complaints of discrimination. The Oregon statutes lend support to Woods' position, indicating in several places an interdependence between state and federal economic development agencies and authorizing the OEDD to administer the participation by the State of Oregon in federal grant funding programs. O.R.S. 184.125; O.R.S. 184.001–184.250.

Woods has submitted evidence that the OEDD acts for the FEDA in the State of Oregon, and that the FEDA asked the OEDD to handle Woods' complaint in December, 1988. A complainant seeking to initiate a claim of discrimination with the FEDA should not lose the absolute privilege by communicating the complaint to the OEDD. Tillamook has not submitted any evidence which creates a factual issue as to the letter of November 30, 1988.

Accordingly, as a matter of law, both letters are entitled to an absolute privilege, and the motion of Woods and KSI for summary judgment is granted. The court need not reach the alternative motion for a stay.

## CONCLUSION

The motion of Woods and KSI for summary judgment (# 18) is granted.