STATE OF NORTH CAROLINA v. BRIAN DOUGLAS EPPLEY AND ROBERT B. BLOCK, ALIAS JAMES E. BERCH

No. 22

(Filed 15 November 1972)

1. **Larceny § 5— possession of recently stolen property — evidence of guilt of larceny**

    The defendant's possession of stolen goods soon after the theft is a circumstance tending to show the defendant is guilty of the larceny and, in the absence of an explanation or other circumstance tending to destroy the basis for the inference, evidence of such possession is sufficient to justify the denial of a motion for judgment of nonsuit on the charge of larceny.

2. **Burglary and Unlawful Breakings § 5— possession of recently stolen property — inference of guilt of breaking and entering**

    Upon proof of larceny following a breaking and entering, the defendant's possession of the stolen articles soon after the theft will support an inference that he committed the breaking and entering.

3. **Burglary and Unlawful Breakings § 5; Larceny § 5— recent possession doctrine — sufficiency of possession**

    Defendant need not have the stolen article in his hand, on his person or under his touch in order for the inferences from the possession of recently stolen property to arise, it being sufficient that he be in such physical proximity to it that he has the power to control it to the exclusion of others and that he has the intent to control it.

4. **Criminal Law § 161— abandonment of assignments of error**

    Assignments of error not brought forward in defendant's petition for *certiorari* to the Court of Appeals or in his brief are deemed abandoned. Supreme Court Rule 28.

5. **Burglary and Unlawful Breakings § 4; Larceny § 6— joint possession of stolen goods**

   Both defendants were in possession of stolen guns found by the arresting officer on the floor of the motor boat occupied by defendants at the time of their arrests where defendants were acting in concert in their occupancy and use of the motor boat and both had ready access to the guns, and the guns were properly seized as an incident of the arrests and were properly admitted as evidence against both defendants in a trial for breaking and entering and larceny.

6. **Criminal Law § 84; Searches and Seizures § 1— guns seized as incident of arrest — admissibility**

   Guns seized as an incident of defendants' arrests were admissible in evidence in prosecutions for offenses different from that for which defendants were arrested when the guns were seized.

7. **Burglary and Unlawful Breakings § 4; Larceny § 6— stolen rifle not named in indictment — admissibility**

   In a prosecution for breaking and entering a home and larceny of property therefrom, a rifle stolen from the home which was found in defendants' possession at the time of their arrests was properly admitted in evidence even though the larceny indictment did not list the rifle among the articles it alleged to have been stolen from the home.

8. **Criminal Law § 84; Searches and Seizures § 1— trespassers — standing to object to search**

   Defendants had no standing to object to the search of a house they occupied as trespassers or to object to the introduction in evidence of the fruits of the search.

9. **Criminal Law § 84— lawfulness of search — failure to hold voir dire — trespassers**

   The trial court did not err in terminating a *voir dire* on the lawfulness of a search and seizure and in overruling defendants' objection to the admission of the seized articles without hearing evidence and finding facts concerning the lawfulness of the search and seizure where defendants made it clear that their sole basis for objecting to the proposed evidence was that they were actually in possession of the house that was searched, rightfully or otherwise, and the trial court concluded that defendants were trespassers on the premises and had no standing to object to the search and seizure.

10. **Larceny § 7— ownership of stolen article — fatal variance**

   Defendants' motion for judgment of nonsuit of a charge of larceny of a shotgun should have been allowed where the person named in the indictment as the owner of the shotgun identified it as an article taken from his home but testified that the gun was the property of his father.

ON appeal from and *certiorari* to the Court of Appeals to review its decision affirming sentences imposed by *McLean, J.,*

at the 9 August 1971 Session of MECKLENBURG upon convictions for felonious breaking and entering and for larceny after breaking and entering.

Each defendant was charged in four separate indictments with breaking and entering and with larceny after breaking and entering. At the insistence of the defendants all of the charges were consolidated for trial. Each defendant was found guilty on each charge in each indictment. Sentences were imposed in accordance with the verdicts.

The State's evidence was to the following effect:

In midafternoon on 8 April 1971, Robert Tatum, a State Wildlife Protector, in uniform, was on routine patrol by boat on Lake Wylie in Mecklenburg County. He observed the two defendants on an island upon which there was a single house. His attention was attracted by a motor boat which had been drawn up onto the shore through some bushes. Going to the island he observed about and within the house both defendants and Eppley's daughter and son. Eppley's son was in the house cooking pancakes. In response to Mr. Tatum's inquiry, Eppley stated that the boat on shore was not his but had been left there that morning by an unidentified man, who had then borrowed Eppley's boat to go for a repairman to work on the motor. Eppley exhibited his driver's license for identification purposes and said the island belonged to his uncle.

Thereupon, Mr. Tatum resumed his patrol of the lake. While so engaged, he saw both defendants and Eppley's son and daughter walking down to the boat on the island. Mr. Tatum, accompanied by Officer Edwards, then proceeded toward the island. Before he arrived the defendants had gotten the other boat into the water and started the motor. Block was operating it, Eppley standing in the bow with a pistol in his hand. Mr. Tatum ordered the defendants to stop. Thereupon, Block headed directly toward Mr. Tatum's boat at high speed. A collision was averted. The defendants then ran their boat into a dead end cove where Mr. Tatum hemmed them in and they stopped.

When the defendants' boat stopped, Eppley put his pistol in his belt. Mr. Tatum took the pistol from Eppley and also removed from the floor of the boat a loaded shotgun and a loaded rifle, which were admitted in evidence over objection. Mr. Tatum arrested Eppley for carrying a concealed weapon

and Block for unlawful operation of a motor boat and violation of wildlife laws.

Approximately three hours later, after carrying the defendants to jail and without a search warrant, Mr. Tatum and County Police Officer Catoe went back to the island and entered and searched the house. There was no one else then on the island and no other boats about it. They found in the house numerous articles, some of which were admitted in evidence over objection.

On April 5, the residence of James Carriker on the lake shore was broken and entered and various specified articles stolen therefrom. Some of the items found by the officers in the house on the island and introduced in evidence were identified by Mr. Carriker as among those taken from his residence. On April 4 or April 5, the cabin of Earl Bynum on Lake Wylie was broken and entered and a portable radio was stolen therefrom. A radio found in the house on the island and introduced in evidence was identified by Mr. Bynum as the one so taken from his cabin. Between April 3 and April 8, the cabin of James Shuman on Lake Wylie was broken and entered and a number of items were stolen therefrom. A drill found by the officers in the house on the island and introduced in evidence was identified by Mr. Shuman as one of the items so removed from his cabin. Between April 4 and April 11, the cabin of Robert L. Hendricks on Lake Wylie was broken and entered and numerous items of property were stolen therefrom. Several articles, not found on the island but at a camp site on the mainland and admitted in evidence, over objection, as to Block only, were identified by Mrs. Hendricks as being among those so removed from the Hendricks cabin.

Neither defendant elected to testify or offer other evidence in his own behalf.

At the close of all the evidence, motions for a judgment of nonsuit as to each defendant on each count in each indictment were made and denied.

The Court of Appeals held the defendants had no right to be on the island and in possession of the house and, therefore, had no standing to object to its search without a warrant. Consequently, it rejected the contention of the defendants that the articles found in the course of such search were erroneously

admitted in evidence over their objection. It likewise found no error in the admission into evidence of the rifle and shotgun found in the bottom of the boat at the time of the arrests and no error in the charge or in other rulings on the admissibility of evidence. The Court of Appeals concluded, however, that the evidence was insufficient to withstand the motions for a judgment of nonsuit in the indictments for breaking and entering the Hendricks cabin (one of the four in question) and for larceny therefrom. It, therefore, reversed the judgment against each defendant on those charges, but concluded there was no error in the judgments entered as to each defendant upon the indictments relating to the Carriker, Bynum and Shuman cabins.

Each defendant appealed on the ground of a substantial question arising under the Constitution of the United States and under the Constitution of the State of North Carolina by reason of the search of the house and boat and the seizure of the articles found therein. Each defendant also petitioned for the issuance of a writ of certiorari to the Court of Appeals to review its judgment with reference to other assignments of error.

*Attorney General Morgan and Assistant Attorney General Hensey for the State.*

*Waggoner, Hasty & Kratt, by John H. Hasty, for defendant Eppley.*

*James J. Caldwell for defendant Block.*

LAKE, Justice.

[1, 2]  In these cases the State relies upon what is called the doctrine of recent possession. While inaccurately named, the doctrine is well established and was thus stated by Chief Justice Pearson in *State v. Graves,* 72 N.C. 482: "When goods are stolen, one found in possession so soon thereafter, that he could not have reasonably got the possession unless he had stolen them himself, the law presumes he was the thief." A better statement of the rule is that the defendant's possession of stolen goods soon after the theft is a circumstance tending to show the defendant is guilty of the larceny. See *State v. Hullen,* 133 N.C. 656, 45 S.E. 513. The burden of proof is not thereby shifted to the defendant and his failure to offer evidence to explain how the stolen article came into his possession does

not compel a conviction. In the absence of an explanation, or other circumstance tending to destroy the basis for the inference, evidence of such possession is sufficient, however, to justify the denial of a motion for judgment of nonsuit on the charge of larceny. The presumption or inference is to be considered by the jury along with other evidence in determining the defendant's guilt. *State v. Foster,* 268 N.C. 480, 151 S.E. 2d 62; *State v. Ramsey,* 241 N.C. 181, 84 S.E. 2d 807; *State v. Weinstein,* 224 N.C. 645, 31 S.E. 2d 920; *State v. Holbrook,* 223 N.C. 622, 27 S.E. 2d 725; *State v. Baker,* 213 N.C. 524, 196 S.E. 829. Upon proof of larceny following a breaking and entering, the defendant's possession of the stolen articles under such circumstances will also support an inference that he committed the breaking and entering. *State v. Jackson,* 274 N.C. 594, 164 S.E. 2d 369; *State v. Parker,* 268 N.C. 258, 150 S.E. 2d 428; *State v. Allison,* 265 N.C. 512, 144 S.E. 2d 578.

[3]   The possession sufficient to give rise to such inference does not require that the defendant have the article in his hand, on his person or under his touch. It is sufficient that he be in such physical proximity to it that he has the power to control it to the exclusion of others and that he has the intent to control it. 72 C.J.S. 233-234; Lee, North Carolina Law of Personal Property 4; Brown on Personal Property, p. 21; Restatement of the Law, Torts, § 216; Black's Law Dictionary, Revised 4th Edition. One who has the requisite power to control and intent to control access to and use of a vehicle or a house has also the possession of the known contents thereof. *State v. Foster, supra,* p. 487; *State v. Harrington,* 176 N.C. 716, 96 S.E. 892; *State v. Johnson,* 60 N.C. 235.

[4]   The trial judge gave the jury full instructions with reference to the inferences which the jury might draw from its finding that each defendant was in possession of recently stolen articles. The Court of Appeals correctly held there was no merit in the defendants' assignments of error concerning these instructions. Neither defendant has brought these assignments of error forward to this Court in his petition for certiorari or in his brief. They are, therefore, deemed abandoned. *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789; Rule 28, Rules of Practice in the Supreme Court of North Carolina.

[5]   There was likewise no error in the admission in evidence, over objection, of the guns found by the arresting officer in

plain view on the floor of the motor boat occupied by both defendants, at the time of their arrests. All of the evidence supports the conclusion that the defendants were acting in concert in their occupancy and use of the motor boat. Eppley was standing in the bow of the boat with a pistol in hand. The loaded rifle and loaded shotgun were lying on the floor between the two front seats, within Eppley's easy reach. Block was operating the motor boat. Nothing in the record indicates that it was of such size that he did not have ready access to both guns. Both defendants were in possession of the guns. *State v. Frazier* and *State v. Givens*, 268 N.C. 249, 252, 150 S.E. 2d 431. They were properly seized by the arresting officer as an incident of the arrests, the lawfulness of which arrests is not questioned by either defendant.

In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685, Mr. Justice Stewart, speaking for the Court said:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. * * * And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence."

[6, 7] The guns so seized by the arresting officer were properly admitted in evidence though the present prosecutions are for offenses different from that for which the defendants were arrested at the time of the seizure of the guns. *State v. Bell*, 270 N.C. 25, 153 S.E. 2d 741; *State v. Haney*, 263 N.C. 816, 140 S.E. 2d 544; *State v. Grant*, 248 N.C. 341, 103 S.E. 2d 339. Both the shotgun and the rifle so seized were identified by Mr. Carriker as weapons which were in a closet in his home immediately prior to the breaking and entering thereof and which were missing immediately thereafter. It is immaterial,

in this connection, that the indictment for larceny from the Carriker home did not list this rifle among the articles it alleged to have been stolen therefrom. The defendants' possession of this rifle was competent evidence upon the charge of breaking and entering the Carriker home. In *State v. Willoughby,* 180 N.C. 676, 103 S.E. 903, the defendant was tried and convicted of breaking and entering and of larceny of certain goods from the building so broken and entered. Justice Allen, speaking for the Court, said:

> "It was competent for the prosecuting witness to give an account of all the goods lost from the store in order that the State might have the opportunity to trace some or all of the articles to the defendant."

See also *State v. Weinstein, supra.*

In *State v. Hullen, supra,* the defendant was indicted for breaking and entering a dwelling house and stealing a watch therefrom. The prosecuting witness was permitted to testify that his house was entered and several articles were taken and carried away therefrom, including a watch and a brown leather pocketbook with a silver fringe around the corners. Another witness was permitted to testify that shortly thereafter the defendant was seen in possession of such a pocketbook. The defendant contended that this evidence was incompetent because the pocketbook was not mentioned in the indictment. Justice Walker, speaking for the Court, said:

> "We also think the testimony of the witness Hill as to the leather pocketbook was competent. It related to a fact which the jury was entitled to consider with the other facts and circumstances in the case. * * *The evidence was introduced, not to convict the defendant of stealing the pocketbook, but for the purpose of showing his possession of one piece of the stolen property, tending to prove that he stole the articles described in the bill, which were taken at the same time. [Citations omitted.]

> "This Court has said that 'it is an established rule of evidence that when, on a trial for larceny, identity is in question, testimony is admissible to show that other property which had been stolen at the same time was also in the possession of the defendant when he had in his possession the property charged in the indictment.' *S. v. Weaver,* 104 N.C. 760; McClain Cr. Law, sec. 514."

[8] Both defendants assign as error the admission into evidence, over their objections, of the articles found by the officers in the house on the island. The officers had no search warrant and no one gave them permission to search the house. No one else was present when the search was conducted, the defendants being in jail. The undisputed evidence is that the island is owned by Duke Power Company and it had not given either of the defendants permission to occupy the island or the house. Thus, the defendants were trespassers. This does not alter the fact that they were, prior to their arrest, in actual possession of the house and its visible contents so as to permit the above mentioned inference that it was they who stole the articles found by the officers.

This Court has repeatedly held that one having no ownership interest in or possessory right to the premises or property of another has no standing to object to a search thereof to which the owner has consented. *State v. Ray*, 274 N.C. 556, 164 S.E. 2d 457; *State v. Craddock*, 272 N.C. 160, 158 S.E. 2d 25; *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506; cert. den., 384 U.S. 1020. The reason is thus stated by Chief Justice Parker in *State v. Craddock, supra:*

> "The immunity to unreasonable searches and seizures is a privilege personal to those whose rights thereunder have been infringed. They alone may invoke it against illegal searches and seizures."

The case of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697, 78 A.L.R. 2d 233, relied upon by the defendants, does not support their position. There the Supreme Court of the United States held that one in possession of an apartment, with the permission of the owner or lessee thereof, has standing to object to an unlawful search of it and to the introduction in evidence of articles so found. The Court, speaking through Mr. Justice Frankfurter, said:

> "No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone *legitimately* on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, *by virtue of their wrongful presence*, cannot invoke the

privacy of the premises searched. As petitioner's testimony established Evans' [the owner of the apartment] consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated." (Emphasis added.)

Clearly, *Jones v. United States, supra,* does not extend the protection of the Fourth Amendment to trespassers. Annot., 78 A.L.R. 2d 246; Annot., 4 L.Ed. 2d 1999, 2012. Neither the Constitution of the United States nor the law of this State confers upon a mere intruder into the house of another the right of the owner to object to a search of it and so enable him to take possession of and use the house of another as a sanctuary within which to secrete stolen property. Such intruder has no right to privacy within such house. Consequently, he has no standing to object to the introduction of the fruits of a search of the house into evidence in his prosecution for the larceny thereof. See *United States v. Gregg,* 403 F. 2d 222 (6th Cir., 1968), affirmed without comment on this point, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed. 2d 442, rehear. den., 395 U.S. 917.

[9] The defendants contend that the trial court erred in that it did not conduct a voir dire to determine the lawfulness of the search and seizure. Upon objection to the introduction into evidence of articles, on the ground that they were discovered by an unreasonable search and seizure, the proper procedure, assuming the objector has standing to raise the question, is for the court to excuse the jury and, in its absence, hear evidence upon the question of the legality of the search and seizure, to make findings of fact and thereon to determine the legality or illegality of the search and seizure. *State v. Pike,* 273 N.C. 102, 159 S.E. 2d 334.

In the present case, upon the objection to the introduction into evidence of the articles found in the house, the court sent the jury from the courtroom and commenced a voir dire. Upon ascertaining from counsel that neither defendant claimed an ownership interest in the house, the court concluded that neither defendant had standing to object to the introduction in evidence of the fruits of the search on the ground that the search was unlawful. The court thereupon overruled the objections to the introduction of the evidence without proceeding further with the voir dire. Upon the voir dire the defendants indicated no purpose to establish or claim any right to the possession of the

house. On the contrary, they made it clear that their sole basis for objecting to the proposed evidence was that they were actually in possession of the house, rightfully or otherwise. Under these circumstances, it was not error for the trial court to terminate the voir dire and overrule the objection without hearing evidence and finding facts concerning the lawfulness of the search and seizure.

The Court of Appeals reversed the judgments of the trial court as to each defendant, both on the breaking and entering charge and on the larceny charge with reference to the Hendricks cabin (Cases No. 71CR19784 and No. 71CR19775 in the superior court) on the ground that the motions for judgment of nonsuit should have been allowed in those cases. Consequently, those judgments are not now before us.

The Court of Appeals affirmed the judgments of the trial court as to each defendant, both upon the breaking and entering charge and upon the larceny charge with reference to the Carriker home (Superior Court Cases No. 71CR19371 and No. 71CR19364), the Bynum cabin (Superior Cases No. 71CR19785 and No. 71CR19776), and the Shuman cabin (Superior Court Cases No. 71CR19372 and No. 71CR19363). We affirm those determinations by the Court of Appeals, with the exception of the charges of larceny from the Carriker home (Superior Court Cases No. 71CR19371 and No. 71CR19364).

[10] Each indictment relating to the Carriker home charged the defendant named therein with the larceny of two shotguns "of the goods, chattels and moneys of the said James Ernest Carriker." James Ernest Carriker testified for the State. He identified one shotgun as an article taken from his home, but he testified that the gun was the property of his father. Though the testimony of this witness was to the effect that this gun was in the linen closet of his home immediately prior to the break-in, nothing in the evidence shows that this witness was a bailee of the shotgun or had any other property interest therein.

The allegation of ownership of the property described in a bill of indictment for larceny is material. If the proof shows that the article stolen was not the property of the person alleged in the indictment to be the owner of it, the variance is fatal and a motion for judgment of nonsuit should be allowed. *State v.*

*Brown,* 263 N.C. 786, 140 S.E. 2d 413; *State v. Law,* 227 N.C. 103, 40 S.E. 2d 699; *State v. Weinstein, supra.* Consequently, the motion of each defendant for judgment of nonsuit as to the count charging him with larceny from the Carriker home should have been granted. This does not affect the count in the same indictment charging him with breaking and entering the Carriker home with intent to commit larceny therein.

We find no error in the judgment of the Court of Appeals with respect to Superior Court Cases No. 71CR19372 (defendant Eppley), No. 71CR19785 (defendant Eppley), No. 71CR19363 (defendant Block), and No. 71CR19776 (defendant Block).

We find no error in the judgment of the Court of Appeals in Superior Court Case No. 71CR19371 (defendant Eppley) with respect to the sentence imposed upon the charge of breaking and entering.

We find no error in the judgment of the Court of Appeals in Superior Court Case No. 71CR19364 (defendant Block) with respect to the sentence imposed upon the charge of breaking and entering.

The judgment of the Court of Appeals in Superior Court Case No. 71CR19371 (defendant Eppley) is reversed in respect to the sentence imposed upon the charge of larceny.

The judgment of the Court of Appeals in Superior Court Case No. 71CR19364 (defendant Block) is reversed in respect to the sentence imposed upon the charge of larceny.

The matter is, therefore, remanded to the Court of Appeals with direction that it enter its judgment reversing the judgment of the superior court in Superior Court Case No. 71CR19371 (defendant Eppley) with respect to the sentence imposed upon the charge of larceny and reversing the judgment of the superior court in Superior Court Case No. 71CR19364 (defendant Block) with respect to the sentence imposed upon the charge of larceny.

Reversed in part and remanded.