STATE OF NORTH CAROLINA v. ERNEST LEE HOLLEY

No. 771SC345

(Filed 17 January 1978)

**1. Assault and Battery § 14.4— felonious assault—intent to kill—inference from the evidence**

      In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injuries, the jury could find that defendant intended to kill the victim from evidence that defendant deliberately shot the victim at close range with a twelve-gauge shotgun.

**2. Larceny § 7.3— allegation of special and general ownership—proof of special ownership only**

      In a prosecution upon an indictment charging larceny, after breaking into and entering the dwelling of Lillie Mae Beasley, of a shotgun "the personal property of Johnny K. Leary and in the possession of Lillie Mae Beasley," there was no fatal variance between indictment and proof where the State's evidence showed only the special property interest of Lillie Mae Beasley in the shotgun in that she had lawful custody and possession of the gun to furnish her protection, since the State's allegation and proof as to the special ownership interest was sufficient and the additional allegation in the indictment as to the general ownership by Johnny K. Leary may be treated as surplusage.

APPEAL by defendant from *Walker (Ralph), Judge.* Judgments entered 8 December 1976 in Superior Court, CHOWAN County. Heard in the Court of Appeals 22 September 1977.

In Case No. 76CR1879 defendant was charged by indictment with (1) feloniously breaking and entering the dwelling of Lillie Mae Beasley, and (2) the felonious larceny therefrom after such breaking and entering of "an Ivor Johnson, Single Barrell (sic), 12 Gauge Shot Gun the personal property of Johnny K. Leary and in the possession of Lillie Mae Beasley."

In Case No. 76CR1854 defendant was charged by indictment with felonious assault upon Willie Moore with a deadly weapon, to wit: a shot gun, with intent to kill inflicting serious injuries.

The cases were consolidated for trial and defendant pled not guilty to all charges. The State presented evidence to show that on the night of 13 November 1976 defendant broke into the dwelling house of Lillie Mae Beasley while she was away from home and stole a shotgun which she kept behind her bed. Mrs. Beasley testified that the gun belonged to her father and that she was keeping it for protection. The investigating officer, Deputy

Sheriff Glenn Perry, testified without objection: "She (referring to Mrs. Beasley) told me the gun belonged to her father, and her father was standing there, and he told me the name and type. The name and type was twelve-gauge shotgun, single-barrel, Ivor Johnson."

The State also presented evidence to show that in the early morning of 14 November 1976 defendant shot Willie Moore with a shotgun. Defendant was waiting in a ditch near the intersection of two roads when Moore drove up in his automobile. When Moore stopped at the intersection, defendant came out of the ditch carrying a shotgun and told Moore to "Hold it." As defendant approached the car from the driver's side, he held the gun up. Moore then "laid down to the right" with his hands on the steering wheel. Defendant fired the gun when he was a few feet from the car (Moore testified that before defendant shot "he got about as close to my car as me to the Judge"), the shots striking Moore in both arms and in his chest. The windows on both the left and right front doors of the car were shot out. It was stipulated that the injuries sustained by Moore were of a serious nature, to the extent that he had to be hospitalized for nine days in the Chowan hospital.

Margaret Holley, defendant's great-aunt, testified that defendant came to her home on the morning of 14 November 1976 and stated in the presence of Moore's wife, who is Margaret Holley's daughter, that "I got him, I shot Jack." (There was evidence that Willie Moore was also known as Jack Moore.) When Margaret Holley asked defendant what he had done with the gun, he replied that he "[t]hrowed it overboard."

Defendant did not testify.

The jury found defendant guilty as charged on all counts. In Case No. 76CR1854 defendant was sentenced to prison for a term of not less than eight nor more than ten years. In Case No. 76CR1879 the two counts were consolidated for judgment, and defendant was sentenced to prison for not less than four nor more than six years, this sentence to run consecutively to the sentence imposed in Case No. 76CR1854.

Defendant appealed in both cases.

*Attorney General Edmisten by Assistant Attorney General Elisha H. Bunting, Jr., for the State.*

*John C. Morehead for defendant appellant.*

PARKER, Judge.

[1] In Case No. 76CR1854 defendant contends that there was insufficient evidence to support the jury's finding that he intended to kill when he shot Moore with the shotgun. There is no merit in this contention. An intent to kill "may be inferred from the nature of the assault, the manner in which it is made, the conduct of the parties, and other relevant circumstances." *State v. Revels*, 227 N.C. 34, 36, 40 S.E. 2d 474, 475 (1946). It must frequently be proved by circumstantial evidence, *State v. Jones*, 18 N.C. App. 531, 197 S.E. 2d 268 (1973), and "is ordinarily shown by proof of facts from which an intent to kill may be reasonably inferred." *State v. Thacker*, 281 N.C. 447, 455, 189 S.E. 2d 145, 150 (1972).

In this case the evidence shows that defendant deliberately shot Moore at close range with a twelve-gauge shotgun. It is well known that a twelve-gauge shotgun fired at close range is a deadly weapon. The jury could reasonably infer that defendant intended the normal and natural result of his deliberate act. Indeed, it is difficult to see how any other inference is reasonably possible from the evidence in this case. Defendant's assignment of error in Case No. 76CR1854 is overruled.

[2] In Case No. 76CR1879 defendant contends that there was a fatal variance between the indictment and the proof with respect to the ownership of the shotgun. The indictment charged defendant with the crime of larceny, after breaking and entering into the dwelling of Lillie Mae Beasley, of "an Ivor Johnson, Single Barrell (sic), 12 Gauge Shot Gun the personal property of Johnny K. Leary and in the possession of Lillie Mae Beasley." Lillie Mae Beasley testified for the State regarding the ownership of the shotgun and her possessory interest in it. She referred to the shotgun as "my gun," but testified that it actually belonged to her father. She did not testify what her father's name was, and the State's evidence fails to disclose the identity of Johnny K. Leary or his connection with the gun. She did testify that she kept the shotgun in her bedroom for protection.

It is, of course, well settled "that the indictment in a larceny case must allege a person who has a property interst in the property stolen and that the State must prove that that person has ownership, meaning title to the property or some special property interest." *State v. Greene*, 289 N.C. 578, 584, 223 S.E. 2d 365, 369 (1976). In this regard, the property may be laid "either in him who has the *general* property or in him who has a *special* property," *State v. Jenkins*, 78 N.C. 478, 479 (1878), or in both. *State v. Greene, supra.* In the present case the indictment did allege both the general owner, Johnny K. Leary, and the special owner, Lillie Mae Beasley, but the State's proof showed only the special ownership interest of Lillie Mae Beasley. We hold this to be sufficient and find no fatal variance. The State's allegation and proof as to the special ownership interest was entirely consistent, and the additional allegation in the indictment as to the general owner may be treated as surplusage. Even had the indictment incorrectly alleged that Lillie Mae Beasley was the general owner while the State's evidence showed only her special property interest (that she had lawful custody and possession of the gun for a particular purpose, i.e., to furnish her protection), there would have been no fatal variance. *State v. Smith*, 266 N.C. 747, 147 S.E. 2d 165 (1966); *State v. Law*, 228 N.C. 443, 45 S.E. 2d 374 (1947); *State v. Hauser*, 183 N.C. 769, 111 S.E. 349 (1922); *State v. Allen*, 103 N.C. 433, 9 S.E. 626 (1889); *State v. Robinette*, 33 N.C. App. 42, 234 S.E. 2d 28 (1977); *State v. Carr*, 21 N.C. App. 470, 204 S.E. 2d 892 (1974); *State v. Cotten*, 2 N.C. App. 305, 163 S.E. 2d 100 (1968). Still less should a variance be found here, where the indictment correctly alleged and the State's evidence showed her special property interest. The purpose of the requirement that the indictment in a larceny case must allege the ownership of the stolen property is to "(1) inform defendant of the elements of the alleged crime, (2) enable him to determine whether the allegations constitute an indictable offense, (3) enable him to prepare for trial, and (4) enable him to plead the verdict in bar of subsequent prosecution for the same offense." *State v. Greene, supra* at 586, 223 S.E. 2d at 370. All of these purposes were adequately served in the present case by the allegations in the indictment as to the special possessory interest of Lillie Mae Beasley and by the State's evidence which fully supported those allegations.

*State v. Eppley*, 282 N.C. 249, 192 S.E. 2d 441 (1972), cited and relied on by defendant, is not here controlling. In that case

the indictment charged the larceny of a shotgun, the property of James Ernest Carriker, while the State's evidence showed that the gun belonged to Carriker's father. In finding a fatal variance, our Supreme Court pointed out that in that case "nothing in the evidence shows that this witness [James Ernest Carriker] was a bailee of the shotgun or had any other property interest therein." 282 N.C. at 259, 192 S.E. 2d at 448. Here, not only did the State's evidence show that Lillie Mae Beasley was keeping the gun for her protection, but the indictment specifically alleged her possession of the gun. Moreover, in the present case, unlike the situation in *State v. Eppley, supra,* there was no positive showing of any variance between the allegation in the indictment as to ultimate ownership and the State's proof in that regard. Nothing in the evidence showed that Johnny K. Leary was not Lillie Mae Beasley's father. (Indeed, the record as a whole strongly suggests that he was. Deputy Sheriff Perry, who swore to the warrant, testified without objection before the jury that Lillie Mae Beasley told him in her father's presence that the gun belonged to her father and that her father then told Perry the name and type of the gun. It is reasonable to suppose that at the same time he also told Perry that his name was Johnny K. Leary, or that Perry already knew this to be the case, because Perry, in swearing to the warrant, described the shotgun by make and type as Lillie Mae Beasley's father had told him and at the same time swore that ultimate ownership was in Johnny K. Leary.)

We find no fatal variance between the State's allegation and proof as to Lillie Mae Beasley's possessory interest in the shotgun.

No error.

Judges MARTIN and ARNOLD concur.