Argued and submitted October 27, 1982, affirmed August 10, reconsideration denied
September 16, petition for review allowed October 25, 1983 (295 Or 840)
See 297 Or 695, 688 P2d 811 (1984)

# BROWN,
*Respondent,*

*v.*

# J. C. PENNEY COMPANY, INC. et al,
*Defendants,*
SHIELDS et al,
*Appellants.*

## (78-8085; CA A22384)

667 P2d 1047

Sandra K. Paulus, Eugene, argued the cause for appellants. With her on the briefs was Darst B. Atherly and Atherly, Butler & Burgott, Eugene.

Daniel W. Goff, Eugene, argued the cause for respondent. With him on the brief was Goff & Smith, Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendants Valley River Shopping Center (VRC) and Ellsworth appeal from a judgment awarding plaintiff damages for personal injuries incurred during a purse snatching in the parking lot of VRC. They contend that the trial court erred in admitting in evidence a computer printout of police activity in the vicinity of VRC, in allowing lay testimony regarding plaintiff's personality change and memory loss following the incident and in failing to grant a motion for directed verdict. We affirm.

On December 23, 1976, plaintiff, a 76-year-old woman, went to VRC to do some shopping. At about 7:00 p.m., she and her husband left the stores and started to walk back to their car. As they reached the car, plaintiff was attacked by a purse snatcher, who grabbed her purse and knocked her to the ground. She sustained numerous injuries from the attack.

All parties agree that the governing case on liability for the intentional acts of third parties is *Uihlein v. Albertson's, Inc.,* 282 Or 631, 580 P2d 1014 (1978). In *Uihlein,* the plaintiff was struck from the rear by an unknown third party while shopping in the defendant's store. The plaintiff alleged negligence on the part of Albertson's for failure to provide security forces, alarms or sufficient lighting to protect the customers. No similar incidents had occurred in the store, but past store managers testified to feeling "uneasy" because this was a "rough" store. The store was in a high crime rate area. The Supreme Court adopted the test in Restatement (Second) of Torts § 344, comment *f* (1965):

> "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."

Thus, in order to prevail in this case, plaintiff was required to show that defendants should reasonably have anticipated that careless or criminal conduct on the part of third persons would be likely to endanger the safety of a visitor.

As part of her evidence on this issue, plaintiff was allowed to introduce a computer printout from the Eugene Police Department that listed crimes at the location of "Valley River." Goldsmith, the computer section supervisor at the time the printout was made, testified that every time a report of a crime is written in Lane County or the city of Eugene, the information from the report is stored in the computer. He further testified that the printout was accurate with respect to the information that was in the computer and related to what the investigating officer said happened at or about the time it happened. Donald Elligson, a Eugene police officer who testified for defendants, stated that similar computer printouts were regularly used by the Eugene police to analyze crime rates in specific areas. The computer printout lists all reports of possible criminal incidents which occurred at "Valley River" between July, 1976, and December, 1976. The printout lists the investigating agency, the number of the type of crime, the crime name, the case number, the date and time of the crime and the address at which the incident occurred.

Defendants contend that the printout should not have been admitted, because (1) the printout is a summary and is not admissible under the business records exception; (2) it was improper to admit it without admitting all of the underlying police reports; and (3) it was not relevant. Each of these objections will be discussed separately.

Defendants argue that the printout is a summary and not subject to the business records exception. It is not a summary as the term is used in *State v. Harris,* 288 Or 703, 609 P2d 798 (1980), and *Shepherd v. Hub Lumber Co.,* 273 Or 331, 541 P2d 439 (1975), both of which are relied on by defendants. It is an official record made by a public officer in the performance of his duty for the City of Eugene Police Department. We held in *State v. Sherman,* 48 Or App 881, 884, 618 P2d 973, *rev den* 290 Or 211 (1980):

"Transcripts of entries in official records stored within either a data processing device or computer are, if properly

certified, admissible as primary evidence of the facts stated.
* * *"

The printout was properly certified by Goldsmith and is admissible under the statutory exception to the hearsay rule set out in former ORS 43.370 (*repealed by* Or Laws 1981, ch 892, § 98).[1]

■          Defendants also argue that the printout should not have been admitted, because they were not given the opportunity at trial to review the underlying reports. Defendants further argue that no showing was made that the reports were too voluminous to present at trial. Defendants' arguments depend upon the premise that the printout was a summary of records, the admissibility of which was authorized as an exception to the best evidence rule under former ORS 41.640(1)(e) (*repealed by* Or Laws 1981, ch 892, § 98). The admissibility of such records was contingent upon the production in court of the original documents for inspection by the opponent of the evidence. *Shepherd v. Hub Lumber Co., supra,* 273 Or at 349. Former ORS 43.370, as pointed out above, made the printout here in question primary, not secondary, evidence. The production of the original crime reports was not a condition to the admissibility of the printout.

■■          Defendants' final objection to the printout is on the ground of relevance. Basically, they argue that it was irrelevant and could mislead the jury, because it contains references to incidents which were arguably not crimes and crimes which did not occur at VRC and because it gives an inadequate description of the crimes. There is no contention that all of the entries contained in the printout were irrelevant. Although defendants pointed out to the court specific entries that were arguably irrelevant, there was no motion to excise those but only a request that the entire exhibit be excluded. A general objection to evidence as a whole, if overruled, is not reversible error if some part is admissible. *Meislahn v. Demorest,* 48 Or App 631, 634-35, 617 P2d 322, *rev den* 290 Or 249 (1980). The trial court properly admitted the printout.

■          Defendants assign as error the court's admission of testimony by two lay witnesses about their observation of per-

---

[1] This case was tried on August 4, 1981. The new evidence code became effective on January 1, 1982.

sonality changes in plaintiff after the purse snatching incident. The only objection was that medical testimony was required to establish causation and these witnesses were not qualified to testify that the injuries plaintiff received caused the changes in her memory and personality. Lay testimony as to the witnesses' observations of plaintiff before and after the incident was admissible to establish the fact that changes had occurred. Assuming that medical testimony was required to establish causation, and that there was a failure of proof in that regard, defendants' remedy was to move to have that element of damage removed from the jury's consideration. There was no such motion.

■        Defendants' final assignment of error is that the trial court should have granted a directed verdict, because there is insufficient evidence to establish defendants knew or had reason to know from past experience that there was a likelihood of conduct on the part of third persons in general which was likely to endanger the safety of visitors. *Uihlein v. Albertson's, Inc., supra.*

We view the facts in the light most favorable to plaintiff, the prevailing party. *Benassi v. Georgia-Pacific,* 62 Or App 698, 662 P2d 760 (1983). The jury could have reasonably construed the evidence to establish the following: 268 incidents of reported crime occurred in or in the area of VRC within the six months prior to the attack on plaintiff. Expert witnesses testified that any incidents of criminal activity in the area of the shopping center increased the risk of harm to shopping center patrons. During the month of December alone, 70 incidents occurred, nearly double the amount occurring during the non-Christmas season.[2] Defendants knew of the availability of statistics from the Eugene police which could have assisted them in analyzing risks in and around VRC but never requested such statistics. The incidence of crime increased during the Christmas season, and the jury could conclude that this was known or should have been known by the director of security for VRC, a former Eugene police officer, who was aware of the existence of police documentation of reported incidents. In previous years, extra personnel had been hired to handle the

---

[2] Totals for other months were July - 35, August - 39, September - 41, October - 40, November - 43.

increased need for security during the Christmas season. No extra personnel were hired during the 1976 Christmas season, when plaintiff was attacked. The jury could conclude that defendants knew or should have known that increased security was required during the period of increased risk. The trial court properly denied defendants' motion for a directed verdict.

Affirmed.