**Donald R. HOSIER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–6893, 1669.**

Court of Appeals of Alaska.

March 17, 2000.

Donald R. Hosier, Anchorage, pro se.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Donald R. Hosier appeals his convictions on several counts of second-degree forgery and one count of second-degree theft.[1] Hosier contends that the trial court committed error by allowing the State to amend the indictment at trial to conform to the evidence. Hosier also contends that he was prejudiced when the trial judge did not inform him of a note received from the jury in the middle of trial. Finally, Hosier claims that the trial court should not have allowed the State to play a tape recording of an interview between Hosier and the police because this interview contained references to Hosier's prior criminal acts. For the reasons explained here, we conclude that the amendment of the indictment was not error, that Hosier was not prejudiced by the trial judge's failure to inform him of the jury note, and that Hosier failed to preserve his objection to the playing of the tape. We therefore affirm Hosier's convictions.

### The amendment of the indictment

Hosier was convicted of forging Richard Dahl's name on several checks written against Dahl's account at Key Bank in Ketchikan. Hosier's indictment mistakenly identified the bank as "First Bank". At Hosier's trial, Superior Court Judge Michael A. Thompson allowed the State to amend the indictment to name the correct bank.

Hosier asserts that Judge Thompson should not have allowed the State to amend the indictment in this fashion. He contends that the identity of the bank was a material element of the charge against him, and thus the amendment substantially prejudiced his rights to be informed of the charge and to have a grand jury review the charge.[2] Hosier is mistaken: the identity of the bank was not a material element of the forgery charge.

As defined in AS 11.46.510(a), the crime of forgery is committed when a person, acting with intent to defraud, either forges (*i.e.*, falsely makes, completes, or alters) a written instrument or, alternatively, possesses or circulates a forged instrument.[3] Here, the State's basic allegation was that Hosier, acting with intent to defraud, wrote checks against a bank account when he had no authority to write the checks or to draw funds from the account.

AS 11.46.990(10) states that when "intent to defraud" is an element of an offense, an intent to defraud any person suffices to establish this element. Thus, if Hosier intended to commit fraud by forging checks, it was irrelevant whether Hosier intended to defraud the owner of the account, the bank that maintained the account, the merchant who accepted the check as payment, or all three.

There may be times, however, when the identity of the victim is relevant to determining whether a defendant has committed forgery. To rebut a charge of forgery, a defendant may assert that they were authorized (or reasonably believed themselves authorized) to make or alter the written instrument as they did. When this defense is

---

**1.** AS 11.46.505(a) and AS 11.46.130(a), respectively.

**2.** *See* Alaska Criminal Rule 7(e), which authorizes a trial judge to amend an indictment at any time before the verdict so long as "no additional or different offense is charged and the substantial rights of the defendant are not prejudiced".

**3.** See AS 11.46.580 for the definitions of "falsely alter", "falsely complete", "falsely make", "forged instrument", "utter", and "written instrument". See AS 11.46.990(10) for the definition of "intent to defraud" (and see AS 11.81.900(b)(16) for the definition of "deception").

raised, the identity of the purported victim may be crucial to the jury's determination of whether the defendant was actually authorized to take the actions alleged in the indictment. In such circumstances, the defendant's rights might be substantially prejudiced if the trial judge allowed mid-trial amendment of the indictment to name a different victim.

But generally, the defendant will have no greater claim of authority to create or alter documents in the name of one victim as opposed to another. The normal rule, therefore, is that when a forgery or theft indictment is amended at trial to name a different victim, this amendment does not allege a different offense, and the alteration of the indictment is not a "material" or "fatal" variance.[4]

The Alaska Supreme Court applied this rule in *Price v. State*.[5] The defendant in *Price* was accused of forgery. The indictment asserted that Price had forged a woman's name as an endorsement to a check, but the indictment failed to explicitly specify that the checking account belonged to this woman. The indictment also failed to explicitly identify the bank at which this account was held.[6] At trial, the court allowed the State to cure these deficiencies by amending the indictment to incorporate a copy of the front side of the forged check.[7] On appeal, Price asserted that the amended indictment fatally varied from the original indictment. But the supreme court rejected this argument:

> The original of the check referred to in the indictment was introduced in evidence as part of the state's case in chief without objection by [Price], so [he] then knew, prior to putting on his defense, what the precise nature of the charge against him was. In addition[,] the trial court ... offered to give [Price] a reasonable time in which to prepare his defense if he claimed that he was taken by surprise by the ... amendment to the indictment. No such claim was made; a continuance was not requested by [the] appellant.
>
> . . .
>
> The failure of the indictment to name the date, the amount and the maker of the check, and the bank on which it was drawn, was an "error in form" within the meaning of [Criminal Rule 7(e)]. The amendment ... does not charge an additional or different offense from that charged by the indictment prior to the amendment. And as we have already [indicated, the] appellant has not shown that any of his substantial rights have been prejudiced.

*Price*, 437 P.2d at 332–33.

In Hosier's case, the forged checks were admitted into evidence at trial. Hosier does not claim that the State failed to disclose this evidence to him before trial, nor does he claim that he was taken by surprise by any aspect of this evidence. Rather, Hosier insists only that the identity of the bank was a material element of the offense, an allegation that could not be changed unless the case was re-submitted to the grand jury. We reject this contention. The identity of the bank was not a material element of the forgery charge against Hosier. And because Hosier has not claimed, much less shown, that the change in the name of the bank prejudiced his defense, the amendment of the indictment was proper under Criminal Rule 7(e).

---

4. *See State v. Fowler*, 938 S.W.2d 894, 896–97 (Mo.1997); *Cooper v. State*, 639 So.2d 1320, 1323 (Miss.1994); *State v. Fennelly*, 123 N.H. 378, 461 A.2d 1090, 1094–95 (1983); *State v. Brasslett*, 451 A.2d 890, 892–93 (Me.1982); *State v. Nases*, 65 Haw. 217, 649 P.2d 1138, 1139–1140 (1982); *Boyette v. State*, 265 Ark. 707, 580 S.W.2d 473, 474 (1979); *Albrecht v. State*, 105 Md.App. 45, 658 A.2d 1122, 1133 (1995) (*dictum*); *Phan v. Commonwealth*, 18 Va.App. 360, 444 S.E.2d 9 (1994) (amendment of the identity of a robbery victim); *State v. Johnson*, 314 S.C. 161, 442 S.E.2d 191, 194 (App.1994); *Flowers v. State*, 815 S.W.2d 724, 727–29 (Tex.Crim.App.1991); *State v. Johnson*, 105 N.M. 63, 728 P.2d 473, 477–78 (App.1986); *State v. McClennon*, 669 S.W.2d 705, 706–07 (Tenn.App.1984). *But see State v. Eppley*, 282 N.C. 249, 192 S.E.2d 441, 448 (1972); *State v. Scarberry*, 187 W.Va. 251, 418 S.E.2d 361, 365–66 (1992) (holding that the identity of the property owner *is* a material element of theft and can not be amended at trial).

5. 437 P.2d 330 (Alaska 1968).

6. *See id.* at 331.

7. *See id.* at 332.

For the same reasons, we reject Hosier's claims (1) that the jury should have been instructed that the identity of the bank was a material element of the offense, and (2) that he should have been granted an acquittal because the State's proof concerning the identity of the bank varied from the allegation in the indictment.

### The jury note

■ On the second day of Hosier's trial, during the State's case-in-chief, the jury sent a note to Judge Thompson, requesting that he ask the prosecutor to speak more slowly and the defense attorney to speak more loudly. Normally, a trial judge should notify the parties of any communication from the jury, and this notification should take place on the record. Judge Thompson failed to discuss the jury note on record, but it is clear from the record that he did convey the jury's requests to the attorneys. During the defense cross-examination of a government witness, Hosier's attorney remarked, "I'm supposed to speak up. Pardon me." In response to this comment, Judge Thompson addressed the jurors: "I did relay your note to Mr. West [the prosecutor] and Mr. Zelensky [the defense attorney]."

■ Hosier contends that he was not present when Judge Thompson notified the two attorneys of the jury's requests. The State concedes that this is so. Both the supreme court and this court have repeatedly held that it is constitutional error for a trial judge to respond to jury questions without notifying the defendant.[8] Although the jury note in Hosier's case did not directly involve the merits of the litigation or the jury's duties in deciding the case, we assume that Judge Thompson's failure to alert Hosier to the note was constitutional error.

■ The next question is whether this error requires reversal of Hosier's convictions. While Hosier may not have been directly informed of the jury's requests, he clearly found out about these requests a short time later. During the cross-examination of a government witness, both Hosier's attorney and Judge Thompson explicitly referred to the jury's note and indicated its contents. Hosier was sitting with his attorney and he presumably heard these remarks. Thus, Hosier became aware of the jury's note shortly after it was received. If he believed that some further action was required in response to the note, he had the opportunity to request this action long before the case was submitted to the jury.

On appeal, Hosier suggests that, had he been present when Judge Thompson initially notified the attorneys of the jury's note, he might have been prompted to request a poll of the jurors when they returned their verdict—to see whether their consideration of any witness's testimony might have been affected by the quickness of the prosecutor's speech or the softness of the defense attorney's speech. But as explained above, Hosier learned of the jury's note during the State's case-in-chief. He therefore had ample opportunity to ask Judge Thompson to question the jury on these matters before the jury retired to deliberate. Hosier's failure to request a poll of the jurors at the close of the case clearly did not stem from ignorance of the jury's note or lack of an earlier opportunity to request that the court take further action in response to the note.

Based on this record, we conclude that even though Judge Thompson failed to inform Hosier of the jury's note when it was received, this error was harmless beyond a reasonable doubt. It therefore does not require reversal of Hosier's convictions.

### The tape of Hosier's police interview

■ Hosier forged and passed the Richard Dahl checks on various dates in August 1996. On September 9th, Hosier was arrested by the Ketchikan police on a probation violation warrant in another case, and he was transported to the police station in a patrol car. After waiving his *Miranda* rights [9], Hosier consented to be interviewed by the police. During the ensuing interview, the police

---

8. *See,* for example, *Wamser v. State,* 652 P.2d 98, 103 (Alaska 1982); *Jones v. State,* 719 P.2d 265, 266 (Alaska App.1986).

9. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

asked Hosier whether he knew anything about the Richard Dahl checks. Hosier insisted that he knew nothing about the checks and that he had not forged or passed any checks.

However, Hosier did mention something of relevance to the investigation: he told the police that he had been involved in a fight at the Pioneer Bar and that he had sustained two black eyes and a broken nose. This information corroborated the report of a liquor store clerk who had received one of the forged checks. The clerk told the police that the man who gave her the check returned to the liquor store about a week later, and that he had two black eyes at that time. (The clerk later identified Hosier in a line-up as the man who had given her the forged check.)

Hosier's statements during the police interview were relevant for another reason as well. As explained above, Hosier denied all knowledge of the Richard Dahl checks. But when the police examined the patrol car after the interview, they found several small pieces of paper in the back seat where Hosier had been sitting. These pieces of paper were fragments of a check belonging to Richard Dahl.

At Hosier's trial, the State offered a tape recording of Hosier's interview. The defense attorney objected that the interview was irrelevant, but the prosecutor declared that Hosier had made admissions during the interview that tended to prove his guilt. Judge Thompson overruled the defense objection and allowed the tape to be played to the jury.

After the tape was played, the defense asked the trial judge to strike the tape. The defense renewed their objection that the interview was irrelevant, and argued that Hosier had not made any incriminating admissions. The defense also claimed that the tape should not be admitted because many portions of it were inaudible. Judge Thomp-

son denied the motion to strike. However, because the interview contained references to Hosier's past criminal activities (*i.e.*, the fact that he was on probation and that he had been arrested for violating probation), the judge gave a lengthy and comprehensive cautionary instruction to the jury, directing them to disregard any suggestion that Hosier had committed criminal acts in the past.

A short time later, Hosier asked for a mistrial. Hosier argued that a mistrial was required because the police interview of him should not have been admitted into evidence. For the first time, Hosier contended that he was intoxicated at the time of the interview and, therefore, he had been incapable of knowingly waiving his *Miranda* rights. Judge Thompson denied this motion. He noted that Hosier had never suggested a *Miranda* violation until that time, and he further noted that Hosier's only stated objection to the tape had been its asserted lack of relevance.

On appeal, Hosier contends that the interview should not have been admitted because it contains references to his past criminal activities. He asserts that Evidence Rule 404(b) prohibited the introduction of this evidence. But, as just explained, Hosier never objected on this ground in the trial court. It was Judge Thompson who noted this problem (after the tape was played) and who, *sua sponte*, gave a cautionary instruction to the jury.

Nor was it plain error for Judge Thompson to allow the State to introduce this evidence. During the interview, Hosier made admissions that were relevant to the charges against him. True, the interview took place following Hosier's arrest for unrelated probation violations, and the interview contained references to Hosier's probationary status. But the fact that the interview contained some arguably objectionable portions did not render the entire interview inadmissible.[10] Moreover, Judge Thompson cautioned the

10. *See Linton v. State*, 901 P.2d 439, 441 (Alaska App.1995), quoting *Brown v. J.C. Penney Co.*, 64 Or.App. 293, 667 P.2d 1047, 1050 (1983) (a trial judge does not commit error in overruling an objection to a unit of evidence as a whole when a part of the evidence is admissible over this objection).

jury against the potentially objectionable portions of the interview. The defense did not argue that this cautionary instruction was insufficient, nor did they seek any elaboration of the instruction. On this record, the admission of this evidence did not manifestly prejudice the fairness of Hosier's trial.[11]

*Conclusion*

The judgement of the superior court is AFFIRMED.

11. *See Potts v. State,* 712 P.2d 385, 394 n. 11 (Alaska App.1985); *Marrone v. State,* 653 P.2d 672, 675–681 (Alaska App.1982) (to qualify as "plain error", an error must be so prejudicial that failure to correct it will perpetuate a manifest injustice).